CHARLES BROOKS vs. WILLIAM S. ELGIN AND JAMES H. ELGIN.—December, 1847.

An unaccepted draft, drawn by a *third* party upon a *fourth*, was endorsed by a debtor to his creditor on account of a precedent debt;—acceptance was refused, and notice given to the drawer by the holder—but notice was not given to the debtor endorser for some months after such refusal. In an action by the creditor against the debtor to recover his precedent debt, the defendant cannot defeat the action to the amount of the draft, by insisting that the holder should have sued the drawee, who had funds of the drawer at the time of the presentation of the draft—the drawer being sued by the creditor, who still retained the draft.

Refusal to accept or pay a draft, established by oral proof, is a question of fact; whether notice of such refusal was given within a reasonable time, is a question of law.

Whether an assignee of a draft, delivered and received on account of a precedent debt, has or has not used due diligence in endeavoring to recover the sum assigned to him, from parties on the draft liable to the assignor, is a question of law.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, brought on the 24th January, 1844, by the appellees against the appellants, *Thomas H. Per-*

*due* and *William Nichols*, trading under the firm of *Perdue, Nichols & Co.* The appellant only appeared below, and pleaded *non-assumpsit.*

The plaintiffs, to support the issue on their part, proved the partnership of the plaintiffs and defendants, as laid in the declaration; and also proved, by competent testimony, the note and account following :

" *Shannondale Furnace, April 21st,* 1842.

" $441 35. Ninety days after date, we promise to pay *J. H. Elgin & Co.* or order, four hundred and forty-one dollars and thirty-five cents—negotiable and payable at the *Bank of the Valley of Va. in Charlestown,* without offset, for value received. PERDUE, NICHOLS & Co."

" Endorsed, *J. H. Elgin & Co.*"

*Messrs. Perdue, Nichols & Co.* To *J. H. Elgin & Co.*
DR.—An account from 22d April to 24th November, 1842, in the aggregate $220 40.

The defendant then offered in evidence the following account and draft :

*Messrs. Perdue, Nichols & Co.* To *J. H. Elgin & Co.*
DR.—An account from 14th April to 20th September, 1842, in the aggregate $635 18, for the same items and the promissory note of the defendants.

CR.—A draft on the *Balt. and Ohio R. R. Co.* for $580, leaving a balance of $55 18 due *J. H. E. & Co.*

The draft was as follows:
*Balt. and Ohio R. R. Co.*
Will please pay to *Hugh Gallace,* or order, five hundred and eighty dollars, for castings used in re-constructing *Harper's Ferry Viaduct, out of any monies due me on my final estimate.*
J. P. SHANNON.
*Harpers Ferry, February 14th,* 1842.
Which said draft was endorsed:

April 4, 1842.   The within order I transfer to *Messrs. Per-due, Nichols & Co.*                 HUGH GALLACE.

Pay to the order *J. H. Elgin & Co.*

*April 8th*, 1842.                 PERDUE, NICHOLS & Co.

The plaintiffs then proved by *J. G. Cobbs*, that on the day the above draft was received by the plaintiffs, he came as their clerk to *Baltimore*, and presented the same to the *Balt. and Ohio R. R. Co.* when he was informed by *Mr. Atkinson*, he thinks, the secretary of the Company, and if not by *Mr. Cann*, the clerk of the chief engineer, that the said draft could not be accepted, and that the Company had no funds belonging to *Mr. Shannon;* that he at once called on *Shannon*, the drawer, about the draft, who said that he had a dispute with the *R. R. Co.* about the settlement of the account, and did not pay the draft.   Witness subsequently returned with the draft to *Harpers Ferry*, and saw *Perdue*, one of the defendants, on or about the 1st January, 1843, who asked whether the said draft had been sent to *Mr. Latrobe*, for suit against *Shannon*, which he told him had been done.   Witness was here told that the draft was in truth sent on the 27th May, 1843, to *Mr. La-trobe*.   He says, however, that he is confident that this conversation took place with *Perdue* at the time stated, which witness fixes; and he believed the draft had been sent at the time he spoke to *Perdue*, though he did not, in fact, know whether it had been sent or not.

The defendant offered in evidence the final statement appended hereto, and the papers connected therewith.

DR.— *The Baltimore and Ohio R. R. Co. in account with Shannon & Scofield, (Contractors.)*   CR.

For the re-construction and new part of the wooden superstructure of the *Harpers Ferry Viaduct*, and the trestle work of *Harpers Ferry*.—Aggregate of debt, .    . $ 61,757 14

By credits from 31st May, 1840, to the 13th September, 1842, in cash, . . . . . . $ 49,576 15

Balance due *S. & S.* . . . . .    12,180 99

                                                  $ 61,757 14

*Engineer's Office, Balt. and Ohio R. R. Co.*
*Baltimore, September 14th,* 1842.

To JOSHUA I. ATKINSON, ESQ.
*Sec. Balt. and Ohio R. R. Co.*

*Sir,—Messrs. Shannon & Scofield,* contractors for the reconstruction and new part of the *Harpers Ferry Viaduct* and *trestling,* at *Harpers Ferry,* have completed their work under that contract, and are entitled to be paid in full the balance of $12,080 99, appearing to be due them in the above account current, on their signing the annexed final receipt and release.

BENJ. H. LATROBE, *Chief Engineer.*

To which was annexed the following power:

I hereby authorize and empower *Mr. Joseph P. Shannon* to sign any receipt in my name, that may be necessary to settle with the *Balt. and Ohio R. R. Co.*—the balance due from said Company to the firm of *Joseph P. Shannon* and *Jesse Scofield*—the said balance being, as per account furnished by said R. R. Co., $12,080 99.

*Dated* 14*th September,* 1842.　　　JESSE SCOFIELD.

To the said account current was annexed a receipt and release to the Company of the balance above mentioned by *Scofield,* dated 6th February, 1843.

The plaintiffs proved that the sum of $12,084 was paid over by the *R. R. Co.* to *Shannon* on the presentation of said engineer's order, and before the 7th February, 1843, and further proved that on the 27th May, 1843, they sent the said draft or order to *Mr. J. H. B. Latrobe* for collection.

The defendant further proved, that no effort was ever made by plaintiffs to collect the amount of the draft from the *R. R. Co.* or *Gallace,* the party who assigned the same to defendant.

The plaintiffs also gave evidence that the draft was received as *collateral security,* and it was admitted that the plaintiffs

33　　v.6.

did not send this draft for suit until 27th May, 1843, and never used any means to obtain payment of said order from the R. R. Co. except its presentation as aforesaid.

The defendant proved by *J. I. Atkinson,* the secretary of the R. R. Co. that he had no recollection that this order had ever been presented to him, but that he would not say that it had not been.

The plaintiffs then offered evidence by the secretary of the Company, that in no event would he have accepted or paid the draft of one of the partners, like that in question, out of the partnership fund.

The defendant prayed the court to instruct the jury:

If the jury believe that on the 22d September, 1842, the defendant assigned to the plaintiffs the order given in evidence, which plaintiffs accepted, and gave the receipt given in evidence, that *J. P. Shannon* and *Scofield* were contractors on the *Balt. and Ohio R. R.* and that on the date of the order given in evidence, no final estimate had been made, but that on the 14th September, 1842, a final estimate was made, by which a balance of $12,080 94 was found to be due said *Shannon* and *Scofield* from the *Balt. and Ohio R. R. Co.* and that the plaintiffs in this cause never took any steps or used any legal diligence to recover the said order, or the amount thereof, from the *Balt. and Ohio R. R. Co.;* and if the jury further believe that such order was given on account of work done by *Gallace* in the re-construction of the *Harpers Ferry Viaduct,* that *Shannon* was one of the parties contracting for the re-construction of said *Viaduct;* and that the plaintiffs presented said draft to some person at the *Balt. and Ohio R. R. Co.* who said there were no funds; that said draft was never delivered back to the defendant by the plaintiffs; and that no notice of its non-acceptance or non-payment was given to the defendant, till January, 1843; that then the plaintiffs are not entitled to recover, but for the balance of their account, after deducting the said draft or order.

If the jury believe the facts stated in defendant's *first* prayer, and further find that the R. R. Co. at the time when such order

was presented, had funds more than ample to pay such order, and continued to hold said funds till *February*, 1843; that the plaintiffs have not used any diligence to collect the sum from them; then the plaintiffs are not entitled to recover, for the amount of said order on the said R. R. Co.: which prayers the court, (ARCHER, C. J. and PURVIANCE, A. J.) refused to grant. The defendant excepted.

The testimony on both sides being closed, and which is to be taken as forming part of this exception, the plaintiffs, by their counsel, prayed the court to instruct the jury—that if the jury shall believe *that after the refusal of the R. R. Company to pay*, or accept the draft of *J. P. Shannon*, notice within a reasonable time—*of which the jury are the judges*—was given to *Nichols, Perdue & Co.* of such non-payment or non-acceptance, then the defendant is not entitled to be credited with the amount of the said draft: which instruction the court, (ARCHER, C. J. and PURVIANCE, A. J.) gave. The defendant excepted and appealed.

The cause was argued before DORSEY, SPENCE, MARTIN and MAGRUDER, J.

By McMAHON for the appellant, and

By LATROBE for the appellee.

MAGRUDER, J., delivered the opinion of this court.

We are of opinion that the court below did not err in refusing to give the instruction of the defendant, as stated in the first bill of exceptions. The facts stated in the prayer, even if admitted or proved to the satisfaction of the jury, would not have entitled the defendant to claim a deduction from the plaintiffs' claim, of the amount of the order offered in evidence.

We think that the court below erred in giving the instruction, which is to be found in the second exception. In that instruction, it is assumed that the Rail-road Company refused to pay or accept the order. The court also said the jury were

the judges whether notice of such a refusal was given within a reasonable time to the defendant below.

In a case like this, (*Crawford vs. Berry, 6 G. & J.*) this court said: " Active diligence is imposed upon the obligee in pursuing the obligor, for a recovery of the sum due on the bill assigned to him, so that nothing shall be lost by his *laches;* and the question is, whether he did use due diligence, which is a question for the decision of the court."

Affirm first exception, and second exception reversed.

PROCEDENDO AWARDED.