OCTOBER TERM, 1890. 111

Ring v. The Chas. Vogel Paint & Glass Co.

FRANK RING, Respondent, v. THE CHAS. VOGEL PAINT
AND GLASS COMPANY, Appellant.

St. Louis Court of Appeals, November 25, 1890, and
February 24, 1891.

1. **Practice, Trial:** ATTACHMENT: OBJECTION TO FORM OF VERDICT.
   An objection to the verdict in an attachment suit, on the ground
   that it is general, must be raised by a motion in arrest of judg-
   ment.

2. **Fraudulent Misrepresentation.** The positive assertion of a
   thing as a fact, without knowledge of its truth, is as much a fraud-
   ulent misrepresentation, if the state of fact represented does not
   exist, as a misrepresentation made with knowledge of its falsehood.
   This rule was applied in this cause to a representation of solvency
   made by a debtor to his creditor.

3. ————: SOLVENCY DEFINED. *Held* that, when a merchant repre-
   sents to his creditor that he is solvent, solvency means not an ulti-
   mate ability to pay his debts, or an excess of assets over liabilities,
   but rather an excess of assets available for the discharge of liabil-
   ities in the usual course of trade.

4. **Corporation:** SUFFICIENCY OF EVIDENCE TO ESTABLISH INSOL-
   VENCY. The sum of $20,000 was unpaid and owing to a mercan-
   tile corporation on its capital stock. If it was not collectible, the
   corporation was insolvent. *Held* that the fact, that the corpora-
   tion made an assignment for the benefit of its creditors without
   attempting to collect this claim, was evidence of the insolvency of
   the corporation, in that it warranted the inference, that this asset
   was not available for the payment of the corporate debts in the
   usual course of trade.

5. **Fraudulent Misrepresentation of Solvency:** RELIANCE UPON
   REPRESENTATION. If a debtor positively represents to his creditor
   that he is solvent, the fact, that the creditor knows that the
   debtor did not promptly pay his debts at maturity, was "hard up"
   and was asking for extensions, does not constitute knowledge that
   the debtor could not pay his debts, if compelled to do so, and,
   therefore, does not prevent the representation of solvency from
   being understood in its sense as above defined.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED.

*Walter M. Hezel* and *H. A. Haeussler*, for appellant.

(1) The court erred in not giving both of the appellant's instructions at end of the plaintiff's evidence, as there was no evidence tending to show that the debt sued for was fraudulently contracted. (2) The instructions given for respondent were improper, and are not the law of the case. *Bank v. Sells*, 3 Mo. App. 85, 91; *Dunn v. White*, 63 Mo. 81; *Delaney v. Rogers*, 64 Mo. 201; *Walsh v. Moore*, 80 Mo. 568. (3) The verdict was not proper, as it is impossible to tell by it whether the jury found the respondent guilty on both, or on the first or second ground of complaint for an attachment, whilst on first count there should have been verdict for defendant.

*A. R. Taylor*, for respondent.

(1) The evidence conclusively shows that defendant was insolvent from March 1, 1889, to time of attachment, and that defendant's officers, Vogel and Costello, knew the financial condition of defendant during that time; this is conceded in appellant's brief. The evidence tends to show, and the jury found, that, with knowledge of the insolvency of the defendant, its said officers represented to plaintiff that it was solvent, and thereby induced him to deliver the goods and contract the debts sued for. This state of facts clearly constituted a fraud in the contraction of the debts, and constituted a good ground of attachment. *Hayes v. Dalzell*, 21 Mo. App. 679; *Brooking v. Sheen*, 25 Mo. App. 277; *Elsass v. Harrington*, 25 Mo. App. 300; *McBeth v. Craddock*, 28 Mo. App. 380. (2) There is nothing in defendant's contention that there was error in the jury failing to find on both grounds of attachment. If they found one ground of attachment it

was sufficient, and no separate finding was necessary. Again this point is not raised by motion for new trial.

ROMBAUER, P. J.—The plaintiff sued by attachment, alleging as grounds for the proceeding that the debt sued for was fraudulently contracted by the defendant, and that the defendant was about fraudulently to dispose of its property. The second ground of attachment was withdrawn by the court at the close of the evidence, and on the first ground, which was the only one submitted to them, the jury found for the plaintiff. The errors assigned by the appealing defendant are, that the verdict is general, that there is no evidence to support it, and that the court misdirected the jury. As no motion in arrest was filed, the first assignment of error is not properly before us.

The defendant is a corporation, and bought merchandise from the plaintiff from time to time. The plaintiff claims that the fraud on part of defendant consisted in the representations of its officers, that the corporation was solvent, when in fact it was insolvent; that said officers made such representations to the plaintiff; and that the parties making them either knew them to be false, or else did not know them to be true, and yet positively asserted them to be true; that the representations were made at and prior to the time when the debt was contracted, were relied on by the plaintiff and formed a material inducement to his giving the credit. If there is any substantial evidence to support these claims, then the verdict cannot be set aside on the ground that the evidence fails to support it. *Dunn v. White*, 63 Mo. 182; *Delaney v. Rogers*, 64 Mo. 201.

The plaintiff's evidence tended to show the following facts: The debt sued for was contracted in August and September, 1889. In July, 1889, the plaintiff had

a conversation with the secretary and treasurer of the
defendant about the renewal of a note, which the defend-
ant owed to him. The secretary told him "that they
( the corporation ) were hard up." The plaintiff states
the further conversation as follows : "I told him that
he was getting behind, and I was getting apprehensive,
and would like to have some assurance from him of what
I was doing. He says, ' We are all right, we are solvent ;
we have lots of money out, but we can't collect it very
fast.' He says, ' You won't run any risk ; I will add
interest too, and you won't run any risk whatever.' "
Similar statements were made by the vice-president of
the defendant at a later period, but before part of the
debt sued for was contracted.

On the twenty-fourth day of October, and within
one month after the last portion of the debt sued for
was contracted, the defendant made a voluntary assign-
ment for the benefit of its creditors, and the assignee at
once took possession of the property. The assignee, who
was called by the plaintiff, testified that, according to
the books, the assets were $28,000, and the liabilities
were $40,000, but may be reduced to $35,000 ; that the
amount realized in cash up to the date of trial, which
took place more than three months after the assignment,
was $11,000, and the total cash realized from all the
assets, if the remaining assets could be turned into cash,
would be $24,000 ; that the capital stock of the corpora-
tion was $40,000, of which amount only $20,000 was paid
up.   It did not appear who had subscribed to this stock,
except that Chas. Vogel was the chief subscriber, and
owned an undivided interest in some real estate which
yielded him $2,500 per annum.

This, and evidence that, about the time of these pur-
chases, the defendant was in a feeble financial condi-
tion, and the checks it gave upon its bankers were
repeatedly unpaid for want of funds to meet them,
being the evidence adduced by the plaintiff bearing on
the question of controversy, we must conclude that the

plaintiff offered substantial evidence in support of the verdict rendered. The law in this state, under the authorities above quoted, unquestionably is, as the court instructed the jury, that "there is no difference in the law as affecting this case, between one's statement of a thing as true, which he knows to be false, and his statement of a thing as positively true, which he does not know to be true, and which turns out to be false."

We do not understand that the defendant seriously challenges the correctness of this instruction, but its counsel contends that there was no substantial evidence of the defendant's insolvency at the date when the representations were made, because it did not affirmatively appear that the $20,000 still due from stockholders could not be collected. It was in evidence that the corporation made an assignment without taking any steps to collect this outstanding asset, if it was collectible, and thus there was inferential evidence at least, that the asset was not available for the payment of the debts of the corporation in the usual course of trade. "The term insolvency," says FIELD, J., in *Toof v. Martin*, 13 Wal. 47, "is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used in a more restricted sense to express the inability of a party to pay his debts, as they become due in the ordinary course of business. It is in the latter sense that the term is used, when traders and merchants are said to be insolvent." In *Cunningham v. Norton*, 125 U. S. 77, the deed of assignment recited that the assignor is indebted to divers persons, in considerable sums of money, which *he is at present unable to pay in full*, and the question was whether the deed of assignment did show on its face that the assignor was insolvent. BRADLEY, J., in passing on the objection, said, "When a person is unable to pay his debts, he is

Ring v. The Chas. Vogel Paint & Glass Co.

understood to be insolvent. It is difficult to give a more accurate definition of insolvency." It is evident, therefore, that solvency on part of a merchant, or merchant corporation, is not an ultimate ability to pay debts or an excess of assets over liabilities, but rather an excess of assets available for the discharge of liabilities in the usual course of trade. In that view the evidence was ample to establish the insolvency of the defendant, because it appeared that it neither discharged its liabilities in the usual course of trade, nor had sufficient assets available for that purpose when the representations were made.

We have examined the instructions with care, and find that they contain a definition of insolvency as herein stated. They tell the jury that, if the representations were a mere expression of honest opinion on part of the officers of the corporation, and not the positive assertion of a fact, the plaintiff could not recover. They tell the jury that, unless the credit was given on the faith of these representations, the plaintiff could not recover. In fact they place before the jury the defendant's claim and evidence fully and fairly. With the weight of evidence we have nothing to do. It suffices that the plaintiff gave substantial evidence, which entitled him to go to the jury, and that the instructions given by the court contained the law applicatory to that evidence, and to the evidence given by the defendant.

All the judges concurring the judgment is affirmed.

### ON REHEARING.

BIGGS, J.—Among other instructions the court gave the following: "The court instructs the jury that, if they find from the evidence that the defendant, at the time of contracting the indebtedness referred to in the evidence, was unable to meet its indebtedness, as it fell due, then defendant was insolvent within the meaning of the law."

Ring v. The Chas. Vogel Paint & Glass Co.

The argument of the defendant's counsel on the motion for rehearing inclined us to the opinion, that, under the peculiar facts of the case, this instruction placed the defendant's liability to attachment on untenable grounds.

This argument was to the effect, that, at the time the plaintiff's debts were contracted, he *knew* the defendant was *unable* to meet its liabilities as they fell due; that for this reason it could not be said that the plaintiff understood the representations of the defendant's officers as to its "solvency" in its mercantile sense; and that he must have so understood the representations in order to make the instruction proper.

The knowledge of the plaintiff on this subject was that the defendant *did not* pay its debts promptly at maturity, and not that it was *unable* to so pay. There is a great difference in the two propositions. The plaintiff knew that the defendant was "hard up," and was asking for extensions; but he was assured by the defendant's officers that the company was "all right." There is not a particle of evidence that he knew that the defendant *could not* pay its debts, if it was compelled to.

There is abundant evidence in the case that the defendant was insolvent in every sense of the word. We, therefore, conclude that the instruction was proper, and that our first opinion is right.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.