MORRIS SELZ *et al.*, Respondents, v. T. E. COLLINS *et al.*, Appellants.

St. Louis Court of Appeals, November 7, 1893.

1. **Banks**: NEGLIGENCE IN FAILING TO COLLECT DRAFT: LAW AND FACT. Whether conduct amounts to negligence is a question of law, when the facts are not in dispute and but one inference can reasonably be drawn therefrom. This rule is applied to the failure of a bank to either collect a draft received by it for collection, or to notify the drawer of its nonpayment in due time.

2. ———: ———: ———. But whether the drawer, in the case of such negligence on the part of a bank, is entitled to a verdict for the full amount of the draft is held under the evidence in this cause to be a question of fact, dependent upon the probability of the collection of the draft if the bank had used due diligence in pressing the drawee for payment, or in notifying the drawer of the nonpayment of the draft.

3. ———: ———: CUMULATIVE REMEDIES. In the case of such negligence, the drawer can prove his claim against the drawee under an assignment for the benefit of creditors, made by the latter, and collect dividends thereon, and can at the same time pursue his right of action for the negligence of the bank; these remedies are cumulative. Nor need the prosecution of his suit against the bank be delayed to await the outcome of the assignment.

*Appeal from the St. Louis City Circuit Court.*—Hon. John A. Harrison, Special Judge.

Reversed and remanded.

*Lee & Ellis* for appellants.

(1) The court erred in taking the case away from the jury. Where a *prima facie* case or defense has been made, the same must be submitted to the jury, and a peremptory instruction is error. *Kenney v. Railroad*, 80 Mo. 573–578; *Carson v. Porter*, 22 Mo. App. 179–184; *Cannon v. Moore*, 17 Mo. App. 102; *Berne v. Railroad*, 20 Mo. App. 232. (2) A bank contracts to use due diligence in the business of collection, and it is only bound to use reasonable care and diligence in the discharge of its assumed duties. In a case of doubt, its best judgment is all the principal has a right to require, especially if the doubt arises by reason of the neglect of the principal to give specific instructions; the bank will be acquitted even if its. discretion be exercised erroneously. 1 Morse on Banking [3 Ed.], sec. 218; *National Bank v. Merchants' Bank*, 91 U. S. 92, 104. It is not within the scope of the collecting bank's agency to bring a suit upon paper left with it for collection, and this rule is much stronger as to an attachment suit and the furnishing of a bond. *Crow v. Mechanics' Bank*, 12 La. Ann. 692; *Weatheral v. Bank*, 1 Miles (Pa.), 399; 1 Morse on Banking, sec. 246. A bank which is itself a creditor of a debtor, and is also a collector for another against said debtor, has a right to prefer itself out of the deposits in its hands as against the party whom it represents as an agent. *Freeman v. Citizens' National Bank*, 42 N. W. Rep. 632. (3) In this case the burden of proof was upon the plaintiffs to show, not only the acts of neglect complained of, but

.also by reason thereof that the plaintiffs had sustained a specific loss, to wit, the amount claimed. The burden does not shift from the plaintiffs to the defendants, when the former has established an act of neglect, so as to require the defendants to show that the plaintiffs had suffered no loss therefrom. *Fox v. Davenport National Bank*, 73 Iowa, 649; *Sahlein v. Bank*, 90 Tenn. 221; *Stowe v. Bank*, 2 Dev.(N. C.) 408; *Bruce v. Baxter*, 7 Lea, 477; *Van Wart v. Woolly*, 3 B. & C. 439; *Allen v. Suydan*, 20 Wend. 329; *First National Bank v. Fourth National Bank*, 77 N. Y. 320; *In the matter of Cornell*, 110 N. Y. 351, 360; *Bank of Mobile v. Huggins*, 3 Ala. 206; *Hamilton v. Cunningham*, 2 Brock. 350; *Pennington v. Yell*, 11 Ark. 212, 219; *Joy v. Morgan*, 35 Minn. 184. (4) It appears that the assigned estate has not yet been settled or wound up; that plaintiffs have proven up their claim before the assignee; have received dividends both before and since the institution of this suit. There is no proof or presumption that plaintiffs will not be paid in full out of the assigned estate, and therefore there was no evidence to go to the jury in support of plaintiffs' second count. Hence, the instruction that the jury should find in favor of the defendants should have been given.

*Nathan Frank* and *Chas. W. Bates* for respondents.

(1) An agent to collect a draft is liable for failure to follow instructions, whereby loss is occasioned to the principal. *Whitney v. Express Co.*, 104 Mass. 152. *Central Georgia Bank v. Cleveland Bank*, 59 Ga. 667; *National Bank v. City Bank*, 103 U. S. 668; *Butts v. Phelps*, 79 Mo. 302; s. c., 90 Mo. 670. Independent of instructions, a failure on the part of the collecting agent to exercise ordinary diligence renders it liable for

the loss. *Dyas v. Hanson*, 14 Mo. App. 363; *City National Bank v. Clinton Co. National Bank*, 30 N. E. Rep. 958; *First National Bank v. Fourth National Bank*, 77 N. Y. 320; s. c., 89 N. Y. 412; *Whitney v. Express Co.*, 104 Mass. 152. Independent of instructions, it is the duty of an agent or bank having a draft for collection to notify the owner, within a reasonable time, of its non-payment, so that he may take such steps for the protection of his interests as in his judgment seem proper, and he is liable for loss occasioned by his failure so to do. *Trinidad National Bank v. Denver National Bank*, 4 Dill. 290; *Allen v. Suydan*, 17 Wend. 368, 372; *Sahlein v. Bank of Lonoke*, 90 Tenn. 221; 16 S. W. 373; 3 Sutherland on Damages, p. 25; *Bank of Mobile v. Huggins*, 3 Ala. 206, 212. (2) The measure of damages in this class of cases—in an action against a collecting bank—is the amount which the plaintiff loses by the default of the collecting bank, with interest. The liability of the collecting agent being established, the claim being proved to have been collectible during the time defendants held it and were guilty of breach of duty as agent, and the insolvency of the drawee, the only party on the draft, being shown, the owner of the draft is entitled to judgment for the full amount of the claim, with interest from the time the cause of action accrued. *Dyas v. Hanson*, 14 Mo. App. 363; *National Bank v. City Bank*, 103 U. S. 668; *Trinidad National Bank v. Denver National Bank*, 4 Dill. 290; *First National Bank v. Fourth National Bank*, 89 N. Y. 412; *Fahey v. Fargo*, 17 N. Y. Sup. 344; Mechem on Agency, sec. 518; 1 Daniel on Negotiable Instruments, sec. 329; 3 Sutherland on Damages, pp. 16 to 30, and cases cited. (3) Where the facts are undisputed, the liability of the collecting bank or agent is a question of law for the court. *Dyas v. Hanson*, 14 Mo. App. 363, 369, 370; *Fahey v. Fargo*, 17 N. Y. Sup. 344; *Allen v. Suydan*, 17 Wend.

368, 372; *State ex rel. v. Hall*, 45 Mo. App. 298, 303; *Matthews v. Loth*, 45 Mo. App. 455, 459; *Trinidad National Bank v. Clinton Co. National Bank*, 30 N. E. Rep. 958; *Murphy v. Railroad*, 21 S. W. Rep, 862, 863; *St. Nicholas Bank v. State National Bank*, 128 N. Y. 26.

ROMBAUER, P. J.—The substantial question arising upon this appeal is, whether the trial court erred in directing the jury to return a verdict for the plaintiffs for the balance .due upon a certain bill of exchange to the plaintiffs from one Wetzel.

The petition of the plaintiffs states the following facts· The plaintiffs are merchants in Chicago, Illinois, and the defendants are bankers in Fort Benton, Montana. On the fifteenth day of October, 1883, the plaintiffs sent to the defendants for collection a draft drawn on Wetzel for $2,032.25, payable one day after sight. The defendants undertook for a valuable consideration to collect said draft. The draft was presented to Wetzel by defendants, .and accepted by him. On the twenty-seventh day of October, 1883, the defendants collected of Wetzel in part payment of said draft $1,016.13, which amount they remitted to the plaintiffs. The plaintiffs had reason to rely, and did rely, upon the defendants' judgment, skill and care for the collection of the balance, and by the exercise of ordinary care and diligence on the part of the defendants the balance of said draft could have been collected of Wetzel. After the defendants received said draft, Wetzel became insolvent and so remained. The defendants knew, or by the exercise of ordinary care might have known, of Wetzel's financial condition, but failed and neglected to use ordinary care to secure for plaintiffs the balance due on said draft, whereby the same was lost to the plaintiffs, with the exception of $325.37 paid to them by the

assignee of Wetzel. The petition winds up with a prayer for judgment.

The answer of the defendants denied generally the facts stated in plaintiffs' petition, and then states in substance the following: It admits that the defendants received the draft for collection with instructions that, if Wetzel would make a reasonable payment upon it, to hold the draft for ten days for payment of the residue. They presented the draft to Wetzel at its maturity, obtained from him payment of one-half, and gave him twenty days wherein to pay the residue. Thereafter, on December 4, they received instructions from the plaintiffs to urge the payment of the balance, which they did, but Wetzel refused to pay it. Wetzel afterwards made an assignment for the benefit of his creditors, and the plaintiffs proved up their claim and received dividends to the amount of $600. The answer sets up the proof by the plaintiffs of their claim before the assignee in bar of this action. The plaintiffs took issue on the answer by reply.

The plaintiffs gave evidence tending to substantiate the facts stated in their petition. It appeared from the plaintiffs' own evidence that, when they sent the draft for collection to the defendants, they stated in their letter: "If he (Wetzel) will make a reasonable payment at maturity, please make returns, and hold for ten or twenty days for collection of balance." To this letter the defendants replied: "Yours of 15th inst. is at hand, enclosing draft for $2,032.25 against W. S. Wetzel. He, to-day, paid us on same one-half, and agrees to pay balance in twenty days. We hand you our St. Louis draft for same." October 27, 1883.

It appeared from the defendants' evidence that the one-half of the draft, which they remitted to the plaintiffs, was money advanced by them for Wetzel, and that Wetzel was at the time overdrawn in the bank of

the defendants where he kept his accounts, and continued to be so overdrawn until December 13, when he made an assignment for the benefit of creditors. It also appeared that, when the plaintiffs, under date of November 27, wrote to the defendants to urge the payment of the balance of draft, the defendants exhibited the letter to Wetzel, who thereupon requested them to honor his check upon their bank for the residue of the draft, which the defendants declined to do on the ground that he was then overdrawn.

It also appeared from the defendants' evidence that, from the date of the receipt of the draft until date of Wetzel's assignment, he was constantly overdrawn on the bank, his overdrafts varying between $567 and $6,820, and being on the majority of days over $5,000; also that Wetzel's indebtedness to the defendants on other matured obligations at the date of the receipt of the draft by them was $5,888, and increased from that time on continually up to the date of his assignment, when it reached the figure of $35,036. It further appeared from the plaintiffs' evidence that, under the laws of Montana, an attachment suit may be brought on all matured obligations upon contracts, expressed or implied, for the payment of money, provided the plaintiff gives bond. It also appeared that the defendants, upon being advised that Wetzel was about to make an assignment, instituted an attachment suit against him for $25,000, which amount they realized *in full;* that the defendants were preferred creditors in the assignment to the amount of $6,000, and were fully secured on the residue of $4,000 not included in the attachment or assignment.

As to Wetzel's financial condition between the date when defendants received the draft, and the date of the assignment, the evidence is conflicting. He himself states the real value of his assets as greatly in excess of

his liabilities, but as likely to be sacrificed by the assignee. That he was embarrassed during the entire interval, and in a commercial sense insolvent, under our definition of that term in *Ring v. Paint Co.*, 44 Mo. App. 111, all the testimony concedes.

The rule, that the question of negligence is ordinarily a question for the jury, means that it is so when the facts are either disputed or, if conceded, admit of different inferences by reasonable men. The proper conclusion to be drawn from a conceded state of facts, admitting of but one reasonable inference, is always a question of law, and the question of negligence is no exception to the general rule. *Boland v. Railroad*, 36 Mo. 484; *Callahan v. Warne*, 40 Mo. 131; *Bell v. Railroad*, 72 Mo. 50; *Mauerman v. Siemerts*, 71 Mo. 101. In applying this rule to negotiable paper, it has been held that what amounts to due diligence in making demand or giving notice of dishonor, where the facts are conceded, is a question of law for the court. *Collins v. Warburton*, 3 Mo. 202; *Wilson v. Huston*, 13 Mo. 146; *Linnville v. Welch*, 29 Mo. 203; *Sanderson's Adm'r v. Reinstadler*, 31 Mo. 483; *Fugitt v. Nixon*, 44 Mo. 295; *Dyas v. Hanson*, 14 Mo. App. 363; *Martin v. Grabinsky*, 38 Mo. App. 366. The first question, therefore, for us to determine is whether under the *conceded facts* the court was justified in declaring as a matter of law that the defendants were guilty of negligence in not notifying the plaintiffs, after the expiration of the twenty days, that the residue of the draft remained unpaid.

The letter of introduction sent by the plaintiffs to the defendants with the draft admits of but one interpretation. It authorized the defendants to hold the draft for twenty days after maturity for the collection of the balance, and no longer. If, at the expiration of the twenty days the balance of the draft was not paid,

it became the defendants' duty to either notify the plaintiffs at once of that fact, or return the draft to them. The extended time, according to defendants' evidence, expired November 16, 1883, and the first information given by the plaintiffs to the defendants of the fact that the residue of the draft was not paid, was under date of December 17, and was to the effect that Wetzel had made an assignment, and that the defendants had handed the draft of plaintiffs to an attorney. No excuse is shown for this delay, nor can we see what excuse could be shown. We hold that, under the conceded facts, the defendants were guilty of negligence in this matter, and that the court committed no error in instructing the jury to find for the plaintiffs.

The next question is, whether the court was justified in declaring, without qualification, that the measure of the damages of the plaintiffs consisted of the unpaid residue of the draft.

On this branch of the case the defendants maintain that the exhibition of plaintiffs' claim to, and its allowance by, Wetzel's assignee bars the action against the defendants; next, that, until the close of the assignment, there can be no judgment for a definite amount against the defendants; and, thirdly, that the question of the extent of the loss of the plaintiffs as a natural and probable result of the negligence of the defendants, is a question which should have been submitted to the jury.

The first proposition must be ruled against the defendants, both on principle and authority. That question goes to the plaintiffs' right of recovery, and not to the measure of their damages. If the plaintiffs have a cause of action against the defendants, it is no answer to say that they have also a cause of action against Wetzel and are pursuing it. Whatever the plaintiffs have or may recover from the assignee is to

be credited to the defendants. *Trinidad Bank v. Denver Bank*, 4 Dillon, 290; *National Bank v. City Bank*, 103 U. S. 668, 672. Some cases hold, and, with reason, we think, that, where the liability of the bank springs from a contractual relation, it will, under the circumstances above shown, upon payment of the loss, be subrogated to the rights of the holder of the draft. But, whether this be so or not, we are not aware of any decision which holds that the plaintiff in a case of this character is bound to exhaust his remedy against the acceptor before he can recover substantial damages from his negligent agent.

This brings us to the last and most serious question in the case, namely: Assuming that the defendants were negligent, is the question whether the plaintiffs suffered loss by such default to the face value of the draft a question of law or of fact?

In order to justify a recovery, as a matter of law, for the entire amount of the draft, it was incumbent upon the plaintiffs to show that the entire loss was due to the default of the defendants, and that, but for such default, the loss would not have happened. *Allen v. Suydan*, 20 Wend. 329; *First National Bank v. Fourth National Bank*, 77 N. Y. 320, 330. Cases may arise where the existence of these two conditions are shown by the evidence to be so *certain* that the question resolves itself into a mere question of law; but where, under the evidence, they are merely more or less *probable*, the question must remain one of fact for the jury under our system of judicial procedure. In this case it was for the jury to say under the evidence whether, if the defendants had used due diligence in pressing Wetzel for payment of the residue, he would probably have paid it, or whether, if defendants had notified plaintiffs of the nonpayment, or returned the draft on November 16, the plaintiffs could probably

have secured its payment by Wetzel, notwithstanding his insolvent condition. Had the cause been submitted to a jury on appropriate instructions, a verdict for the plaintiffs for the full amount of the draft, less credits for money received from the assignee, would have been well supported by the evidence.

The cases cited by plaintiffs in opposition to this view are not in point. In *Whitney v. Express Co.*, 104 Mass. 152, the agent neglected to present a draft for payment, although, as the case finds, the *drawees were ready to pay it.* The drawees became insolvent before demand. It does not appear on what instructions the case was submitted to the jury, but the plaintiffs secured a verdict for the full amount in the trial court, and the supreme court simply held that the loss *was wholly due* to defendant's neglect and must be borne by them. The case of *Trinidad Bank v. Denver Bank*, 4 Dillon, 290, was one of the failure to present a draft for payment, and *it was conceded that the draft would have been paid, if presented in time.* It was not presented, and the drawee failed. Judge DILLON held that the measure of damages was the amount of the draft. In *Dyas v. Hanson*, 14 Mo. App. 363, the question was submitted to the jury, in appropriate instructions, whether the draft could not be collected *in consequence of a failure to present it within a reasonable time.* The only case which seems to have any bearing is *Fahy v. Fargo*, 17 N. Y. Sup. 344, where the court held that, where it is *reasonably probable* that the draft would have been paid if defendant had done his duty, he is *prima facie* liable for the whole amount of the draft. In that case the referee found an absence of a reasonable probability, and his finding was reversed by the supreme court; but whether the reversal was had because the court found that the referee erred in his finding of facts, or in his findings of law, does not clearly appear.

We must conclude that the last proposition above stated should have been submitted to the jury, and that, in taking it away from them by a peremptory instruction, the court committed error prejudicial to the defendants.

The judgment is reversed and the cause remanded. All the judges concur.