GRIER, Respondent, v. STROTHER, Appellant.

St. Louis Court of Appeals, March 7, 1905.

1. **PRACTICE: Instruction: Ignoring Evidence.** Where plaintiff sued his partners for a balance alleged to be due, it was error to instruct the jury authorizing them to consider the profits from the partnership in the absence of evidence to show the partnership made any profits.

2. ——: ——: **Ignoring Counterclaim.** In an action, where a counterclaim was filed by the defendant and evidence offered in its support, an instruction authorizing a verdict for plaintiff and ignoring the counterclaim was erroneous.

3. ——: ——: **Waiver.** But where the jury in such case, following the instruction, failed to make a finding upon the counterclaim, the failure of the defendant to object to the verdict when rendered, or to call the attention of the trial court to it by motion in arrest of judgment, was a waiver of the error.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*C. G. Shepard* and *Faris & Oliver* for appellant.

(1) The court erred in giving instruction numbered 1, on part of the plaintiff. It will be seen that the instruction in question wholly ignores the counterclaim presented by defendant, and treats the matter as if the action stood alone upon the allegations of the petition, without reference to defendant's counterclaim. Defendant had the right to urge his counterclaim and the right to have the jury pass upon the same by appropriate instructions. State to use v. Hudson, 86 Mo. App. 501; Schaaf v. Fries, 77 Mo. App. 346; Worthington v. Railway, 72 Mo. App. 162; Bank v. Murdock, 62 Mo. 70; Crews v. Lackland, 67 Mo. 621; Fitzgerald v. Hayward, 50 Mo. 516; Griffeth v. Conway, 45 Mo. App. 574; Beauchamp v. Higgins, 20 Mo. App. 514. (2) The court erred in trying this case at law when the issues presented were cognizable and triable solely in equity. Scott v. Caruth, 50 Mo. 120; Gaskill v. Spence, 83 Mo. App. 380; Johnson v. Ewald, 82 Mo. App. 276; Smith v. Smith, 33 Mo. 557; McKnight v. McCutchen, 27 Mo. 436; Leabo v. Renshaw, 61 Mo. 292; Bambrick v. Simms, 132 Mo. 48, 33 S. W. 445; Ely v. Koontz, 167 Mo. 371, 67 S. W. 299; Feurt v. Brown, 23 Mo. App. 332; Rankin v. Fairley, 29 Mo. App. 587; 15 Encyc.Pl. & Pr. 1006 and c. c.

*W. W. Corbett* for respondent.

. STATEMENT.

In June, 1893, C. G. Shepard and J. D. Strother were partners in a general store, in Caruthersville, Missouri, doing a general mercantile business under the firm name of Shepard & Co. In the same month Shepard and Strother and Harrison P. Grier formed a partnership for the purpose of manufacturing lumber, in Pemiscot county, Missouri, under the firm name of "The Mill Company," to share equally in the profits and

losses. According to Grier's evidence, the mill and machinery for manufacturing lumber were to be bought by Shepard & Co. and were to be paid for out of the products of the mill; that it was agreed that he should give his entire time to the mill and file the saws and look after the machinery, and that Strother should be sawyer. According to the evidence of Shepard and Strother, the agreement was that, as Grier had no money, Shepard & Co. were to furnish the mill and machinery in consideration that Grier would superintend the mill and give his entire time and attention to his business, and that neither Shepard or Strother was to give any of their time to the operation of the mill or to its superintendence. The mill and machinery were purchased by Shepard & Co. at a cost of three thousand dollars and turned over to the mill company. The mill was erected by Grier and Strother and put in operation. Shepard testified that Shepard & Co. paid twenty-five hundred dollars cash on the purchase price of the mill and gave their note for the balance (five hundred dollars) which was afterwards paid by money realized from sales of the products of the mill. The lumber manufactured by the mill company was all delivered to Shepard & Co. and sold by them. The firm also paid all the running expenses of the mill and kept the only accounts of the products, receipts and expenses of the mill that were kept. The mill was kept in operation until December, 1898, when it ceased to manufacture lumber and the mill and all the assets of the company were subsequently disposed of by Strother and Grier. There has never been a formal dissolution of the partnership nor a settlement of the affairs of the partnership between the partners.

The petition is a very lengthy one, the gist of which is the plaintiff's claim that the firm of Shepard & Co. owe him a balance of $1,530.27, made up of the following items, for which plaintiff prays judgment:

Grier v. Strother.

"Balance due plaintiff as shown by the
mill books of Shepard & Co......$  200 00
Twelve head of mules and one horse,
one-third interest .. ...........  333 33 1-3
One gang edger and pump, value $200,
one-third interest .. ...........  66 66 2-3
One log turner, value $15, one-third in-
terest .. .. ... ..............  5 00
One engine, value $150, one-third in-
terest .. ... ................  50 00
One set rolling chains, value $15, one-
third interest .. ..............  5 00
Individual lumber for gins, and resi-
dences and outbuilding and ap-
purtenances in Caruthersville,
one-third interest .. ............  133 33 1-3
Sale of timber to Reynolds and bal-
ance due, not shown on books, one-
third interest .. ..............  266 66 2-3
Sale of land to W. E. Talley, one-third
interest .. ... ................  533 33 1-3
One-third interest in stave bolts ......  117 75

Total .. .. ...................$1,711 10 1-3
Plaintiff states that out of the above amount, he
has realized the following amount, to-wit: .
"For sale of five head of old broken
down mules .. .. ..............$  147 50
Two-thirds of defendants' interest in
carload of second-class lumber ....  33 33 1-3

$180 83 1-3
Balance due plaintiff ..............$1,530 27"

Shepard and Strother filed separate answers, both
of which deny any indebtedness to plaintiff and set forth
counterclaims showing that plaintiff is largely indebted
to Shepard & Co. Before the cause was submitted to
the jury plaintiff dismissed his suit as to Shepard (it

having developed on the trial that Shepard had been adjudged a bankrupt and that his estate was in process of administration in the bankrupt court). Strother's answer alleged that the mill company was indebted to him in the sum of three thousand dollars for personal services, one-third of which was due from the plaintiff, for which he asked judgment, and that plaintiff was personally indebted to Shepard & Co. in the sum of twenty-three hundred dollars for which judgment was also prayed.

Plaintiff gave evidence tending to prove most of the items of his account. He testified that he gave his entire time to the business of the mill while it was in operation and that many million feet of lumber was cut and delivered to Shepard & Co. who disposed of all of it except some twelve or fourteen thousand feet, which they used for building purposes, in the construction of a gin house and two dwelling houses; that he drew out very little cash from the mill company for his own use; that he got all of his personal and family supplies from Shepard & Co. during the entire period he worked at the mill, but did not know the amount of his bill at the store of said company. Plaintiff also testified that Strother did most of the sawing and stayed at the mill most of the time.

On the part of the defendant the evidence shows that the mill company lost money during the whole time it was in operation and that the mill company was indebted to Shepard & Co. something over two thousand dollars, and that plaintiff's individual account with Shepard & Company, after allowing him all credits and set-offs, and all credits due him from the proceeds of the mill and the sale of the mill, machinery and personal property on hand at the time the mill closed down, was between twelve and thirteen hundred dollars.

Strother testified that he gave his entire time to the mill company during the period the mill was in operation; that he had to do this as plaintiff failed to

make the business a success and seemed to be too slow to keep the mill going; that his services were worth three thousand dollars, one-third of which was due from the mill company. The evidence on the part of defendant also tends to show that plaintiff was not entitled to any credits on any of the items in his petition except for twelve or fourteen thousand feet of lumber used by Shepard and Strother.

The account books of Shepard & Co. were not produced at the trial. They were in the hands of a receiver in bankruptcy and neither party took any steps to have them produced in evidence. The evidence further shows that the partnership of Shepard & Co. was dissolved before all the assets of the mill company were disposed of, and that Strother either sold or was using all the personal property except four mules which plantiff received and sold, as he testified, for one hundred and forty-seven dollars, but which, according to defendant's evidence, were worth four hundred dollars.

The pleadings and the evidence show that this is purely an equitable case and that the issues should have been submitted to the court or referred to a referee. Nothing of this kind, however, was asked by either party or suggested by either party to the court. The parties to the suit and the court treated the case as one at law and submitted the issues to the jury who returned the following verdict:

"We, the jury, find the issues for the plaintiff, H. P. Grier, and do assess his damages at the sum of ($1,500) fifteen hundred dollars.

"C. P. WILLIAMS, 'Foreman."

After taking the usual steps to preserve his exceptions defendant appealed.

BLAND, P. J. (after stating the facts).—Appellant assigns as error the giving of the following instruction for the plaintiff:

"1. The court instructs the jury that if you believe

and find from the evidence that the plaintiff, H. P. Grier, and the defendant, Jeff. D. Strother, and one C. G. Shepard, on the ———— day of June, 1893, formed a copartnership for the purpose of manufacturing and dealing in lumber or timber and continued to do so until the ———— day of December, 1899, and that each of said partners were by their contract to share the profits and losses of said partnership, and during the continuance of said partnership which was so formed by these parties, said copartners made and realized any amount of profit. · And should you further find that the copartnership of C. G. Shepard & Co. received said profits and appropriated the same to their own use, and that the defendant, Jeff D. Strother, constituted one of said firm of C. G. Shepard & Co., then and in that event you should find for the plaintiff in such sum as the proof shows he is entitled to."

There are two objections to this instruction, first, · there is no substantial evidence that the mill company made any profits. Plaintiff showed that he did not keep any account of the mill company's business and had no definite idea as to whether the company made or lost money and that he was in total ignorance of the income and expenses of the mill. On the other hand, Shepard, who testified he kept the mill accounts, said that the mill company lost money from the start and continued to lose money as long as it was in operation and that it was indebted to Shepard & Company for about two thousand dollars; second, the instruction is erroneous, in that it utterly ignores the counterclaim, although it was supported by the evidence of both Shepard and Strother. The individual indebtedness of plaintiff to Shepard & Co. was pleadable as an offset

against plaintiff's demands against the firm of Shepard & Co. and this offset could not be cut out or dismissed by the dismissal of the suit as to Shepard and·proceeding against Strother alone, and the learned trial judge very properly instructed the jury for defendant, that it should find for the defendant on his counterclaim, if the evidence proved it. But the jury followed the instuction for plaintiff, in which it was authorized to, and did, entirely ignore the counterclaim. Appellant assigns here for the first time as error, the failure of the jury to make any finding. on the counterclaim. This objection to the regularity of the verdict comes too late. It should have been made at the trial when the verdict was returned and, if not then corrected, the attention of the court should have been called to it by motion in arrest of judgment. This was not done. Saddlery Co. v. Bullock, 86 Mo. App. l. c. 93; Henderson v. Davis, 74 Mo. App. 1; Ring v. Paint & Glass Co., 44 Mo. App. 111.

As the judgment must be reversed and the cause remanded for new trial, we think it well to suggest to the trial court and to the parties· that, in our opinion, the procedure, according to the rules of equity, is much better adapted to a full and fair investigation of the matters in dispute between the parties than is the procedure at law. The cause should be tried for what it is. The pleadings are somewhat defective and leave to amend them should be granted, if the parties are so advised.

The judgment is reversed and the cause remanded. All concur.