THE BOHEMIA.[1]

COHN *et al. v.* THE BOHEMIA.

*(District Court, S. D. New York.* April 9, 1889.)

1. SHIPPING—CARRIAGE OF GOODS—DAMAGE BY DELAY AT QUARANTINE.

A vessel, detained 14 days at quarantine, and afterwards delivering her cargo of potatoes damaged by rot, whose bill of lading excepted liability for "decay," for damage caused by "restraint of princes, rulers, or people," and "loss or damage caused by the prolongation of the voyage, or by causes beyond the carrier's control," is not liable for such damage to her cargo, unless caused by negligence.

2. SAME—TRANSSHIPMENT.

A vessel carrying both passengers and cargo was detained at quarantine, and no request was made by the cargo-owners to deliver the cargo there, though they were fully notified of the detention, and it did not appear that any one apprehended damage to the cargo by reason of the detention. *Held,* that no negligence was imputable to the ship for not transshipping the cargo at quarantine for the purpose of more speedy delivery, and that she was not liable. Upon a temporary detention a vessel is not bound to transship cargo, unless damage is to be expected from the probable delay.

In Admiralty. Libel for damages to a cargo of potatoes.

*Abbett & Fuller,* for libelants.

*Butler, Stillman & Hubbard,* for claimant.

BROWN, J. On the 28th of April, 1888, the steamer Bohemia arrived at this port from Hamburg, with 481 bags of potatoes belonging to the libelant, deliverable, according to the bill of lading, "at Hoboken, or elsewhere within the port of New York." The usual delivery of merchandise by vessels of the line was at Hoboken. The vessel had about 1,200 passengers in the steerage, who fully occupied the two between-decks. The potatoes were stowed in the lower hold, on top of other goods. A few cases of small-pox appearing among the immigrants about the time the vessel reached Sandy Hook, she was detained at quarantine for 14 days, when she proceeded to her dock at Hoboken, and discharged the potatoes during the following day. The potatoes were much damaged by rot, one-half of them being worthless. The libel was filed to recover for the loss of the potatoes, charging bad stowage and negligent delay in delivery.

Although there is no proof of the actual condition of the potatoes within the bags at the time they were shipped, inasmuch as the evidence shows that the bags were then in good order, and without stains indicating rotten potatoes, I assume that they were in good order when shipped. It is contended that the damage was owing to the 14 days' detention at quarantine. This fact is not strictly proved, and it is doubtful whether it is fairly to be inferred from the mere fact that another shipment of potatoes, made by the same shipper at Hamburg at about the same time, by another vessel, which was not detained at quarantine, turned out good.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

But assuming that the decay of the potatoes was wholly owing to the 14 days' detention, I am of opinion that the vessel is not liable under the exceptions of the bill of lading, and that no negligence is attributable to her in respect of the delay. The first clause among the exceptions of the bill of lading includes "restraint of princes, rulers, or people," which covers quarantine detention; also "loss or damage caused by the prolongation of the voyage," or "by causes beyond the carrier's control." The steamer's voyage was not completed until she reached her dock, unless the voyage was to be deemed previously broken up. After the 14 days' detention at quarantine, the steamer finished her voyage by going to her usual dock at Hoboken, and there delivering all the bags. The voyage was not previously broken up. The libelants had immediate notice of the detention at quarantine, and of the expectation of the ship-owners here, from day to day, that the steamer would be shortly released; and they also had notice that after several days' consideration the health officers had determined to hold the vessel for the full quarantine period of 14 days. The libelants, notwithstanding this notice, did not demand that their potatoes should be delivered at the quarantine station, or that the ship's transportation should end there; so that neither was the voyage broken up in fact at quarantine, nor can it be supposed that the libelants desired that it should be. The detention at quarantine was therefore a "restraint" causing a "prolongation of the voyage" within the first clause of the bill of lading. The first clause also includes among the exceptions "any loss or damage caused by heat, decay, or putrefaction arising from the nature of the goods." These exceptions also evidently include the rotting of the potatoes, and exempt the carrier from responsibility, unless the decay was caused through some negligence of the ship. *Clark* v. *Barnwell*, 12 How. 272, 280; *The Portuense*, 35 Fed. Rep. 670; *The Vaderland*, 18 Fed. Rep. 740, and cases there cited.

2. *Negligence.* There is no evidence of negligence in the stowage of the potatoes, or through lack of the customary ventilation. It is contended, however, that potatoes are perishable cargo; that the bags might have been removed at quarantine into lighters, and carried thence for delivery at the usual dock at Hoboken; or that a permit might have been obtained to land the immigrants at Hoffman island for detention during the quarantine period, and the vessel thereby released and suffered to complete her voyage, and deliver her cargo at once. The evidence shows that either of these courses might possibly have been pursued. The testimony of the health officer is to the effect that small-pox is not regarded as infecting the ship or the cargo. The few immigrants that clearly had small-pox were immediately removed from the ship; the rest were detained by way of precaution, lest further cases might appear during the period of the incubation of the disease. In such cases, on application, the vessel may be allowed either to land her passengers temporarily upon Hoffman island, and thereupon complete her voyage, or the cargo may be unshipped while the passengers remain on board. Both of these courses are occasionally pursued. Either would have been attended in this case with considerable additional expense,—the removal

of the sacks of potatoes upon a lighter being much less expensive. On behalf of the ship-owners it was testified that they did not suspect, and had no reason to believe that the potatoes would be injured by the short detention at quarantine. No notice to that effect was given them, nor was any request made by the libelant to unload them there. There is no proof before me to show what length of time in transportation is likely to prove injurious to potatoes in bags. The libelants themselves must be presumed to have had at least as much knowledge on that subject as the master or the ship's agents here; and, had the libelants been under apprehension that the detention at quarantine would prove damaging to the potatoes, they would not have failed to notify the representatives of the vessel, and would naturally have suggested the need of immediate delivery. It is the general rule of the maritime law that in extraordinary circumstances the master shall consult the shipper or consignee, when practicable, as respects his interests. The correlative duty is implied in the freighter to suggest any measures that he may suppose his particular interests to require. If he does not do so, he cannot complain that his interests are neglected. The libelants being fully notified of the detention, and frequently consulted about it, it was their duty to notify the vessel of danger to the potatoes from delay, if they apprehended any danger, and to request measures to avert it, such as transshipment of either passengers or cargo; but they gave no notice, and made no such request. The libel does not charge that potatoes are perishable cargo; that the detention at quarantine was likely to prove dangerous to them; or that injury therefrom was to be naturally apprehended, or was apprehended in fact by any one; or that any notice of that kind was given to the ship. To entitle to a recovery on the ground of negligence in this branch of the case some one or more of these facts should have been charged and proved. Without this, no negligence is imputable to the ship; because no duty upon the ship is otherwise established to have taken special measures for the immediate delivery of the cargo, notwithstanding the lawful detention at quarantine. A ship detained for a short period is not, as a rule, bound to be at the extra expense of transshipping the cargo for immediate delivery, or transship the passengers, to whom she is equally bound, for the sake of the cargo interests, unless she has reasonable ground to believe that such transshipment is necessary to prevent damage to the cargo through the probable delay. The maritime law is not, as claimed, that one shipper's goods are to be treated as though they alone were on board. The whole cargo and passengers are bound up in one common interest. The rights of each and all must be considered. It was the sickness among the passengers that caused this detention. The shipper, in shipping on a vessel that usually takes passengers, ran that risk. *Clark* v. *Barnwell, supra; The T. A. Goddard,* 12 Fed. Rep. 174. The passengers had as much right to remain on board, or to be delivered at their destination from and by this ship, as the cargo had. And where no damage to either was to be reasonably apprehended from both remaining on board during the probable delay of a few days only the vessel was not required to transship either. Abb. Shipp. *368. The passengers were

probably better off on the ship than on the island, which could not accommodate so many without much crowding; and as regards damage to the potatoes, not only is there no proof that any such damage was feared, or ought to have been apprehended, but the inference is very strong that the injury, notwithstanding the detention, was quite as unexpected to the libelants as to the claimants. It was not negligence in the ship to omit the extraordinary measures of transshipping either passengers or cargo to prevent a damage that she had no reason to apprehend, and without any request from the freighter, with whom she was in daily consultation. The seventh clause in the bill of lading provides that "if the ship shall be prevented from reaching her destination by quarantine, the carrier may discharge the goods into any depot or lazaretto as a final delivery, and at the expense of the goods." The ship in this case was not "prevented" from delivering the bags at their destination, for they were all delivered there. Literally, this clause does not apply. It might be held applicable by construction, however, to a case where the detention was likely to be for so long a period as to prevent delivery within the time known to be necessary for the preservation of the goods. Such is not the present case, for that was neither known nor apprehended by either party. The causes of the damage, namely, "decay" and "the prolongation of the voyage," being both within the exceptions of the bill of lading, and no negligence or failure of duty on the ship's part being established, the libel must be dismissed, with costs.