NEW YORK & PORTO RICO S. S. CO. v. GUANICA CENTRALE.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 60.

1. TRIAL ⬅⮞260(9)—ACTIONS FOR BREACH OF CONTRACT—INSTRUCTIONS.

After defendant's steamship had sailed for Porto Rico with a cargo for a number of ports, the first of which named on her cargo report was San Juan, and the last Guanica, about 12 hours' sail from San Juan, quarantine regulations to prevent the spread of bubonic plague were promulgated, under which steamers docking at San Juan were prohibited from going alongside a dock at any other port. Though the San Juan cargo could have been lightered, while there were no lighters at Guanica, and though the vessel might have been stopped, and sent to Guanica and other ports before docking at San Juan, it docked at San Juan, and thus made it necessary to discontinue its voyage to Guanica. In an action for failing to deliver the cargo destined to Guanica, the court charged that defendant was not liable if it did what the ordinarily prudent man would have done, considering the facts presented to its captain and agent, and that the jury should consider whether a part of the cargo was entitled to greater consideration than any other part, and left it to them to determine whether it acted with reasonable prudence for the interests of all concerned. *Held* that, the court having fully and fairly presented the case to the jury, it was not error to refuse to charge that the consignee at San Juan was entitled to immediate delivery at the dock, and that, unless it was reasonably apparent that reasonable prudence for the interests of all concerned required such course, defendant would have no right to proceed first to Guanica, nor to discharge the San Juan cargo by lighters.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 658; Dec. Dig. ⬅⮞ 260(9).]

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. NEGLIGENCE ☞136(2)—QUESTIONS OF LAW OR FACT.

Negligence is a question of law and fact; the question whether a particular act has been performed or omitted being one of fact, and the question whether its performance or omission was a breach of a legal duty one of law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 279, 281; Dec. Dig. ☞136(2).]

3. NEGLIGENCE ☞1—NATURE AND ELEMENTS.

"Negligence" is the failure to perform some act required by law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Negligence.]

4. SHIPPING ☞115—DUTY OF CARRIER TO SHIPPER.

The duty of a steamship carrier having a cargo destined for various ports in Porto Rico, at one of which ports bubonic plague existed making quarantine regulations necessary, was a duty to all of the shippers, and an action by one of the shippers for failure to deliver its cargo at destination could not be disposed of as though its goods were the only goods on board, and the extent of the carrier's duty to it was to be determined by a consideration of all the surrounding circumstances.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 433; Dec. Dig: ☞115.]

5. NEGLIGENCE ☞136(2)—QUESTIONS OF LAW OR FACT.

The question of negligence must be submitted to the jury as one of fact, not only where there is room for a difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such a difference as to the inferences which might fairly be drawn from conceded facts.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 279, 281; Dec. Dig. ☞136(2).]

6. SHIPPING ☞115—ACTIONS FOR BREACH OF CONTRACT—QUESTIONS FOR JURY.

In an action against a steamship carrier for failure to deliver a cargo destined to Guanica, Porto Rico, due to the fact that, after docking at San Juan, quarantine regulations prohibited the steamer from docking at Guanica, evidence held to make a question for the jury as to whether defendant was negligent in docking at San Juan, instead of first sending the steamer to other ports, or lightering the San Juan cargo.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 433; Dec Dig. ☞115.]

7. APPEAL AND ERROR ☞999(3)—REVIEW—QUESTIONS OF FACT.

Where the question of defendant's negligence was one which could properly be submitted to the jury, the jury's conclusion that defendant was negligent could not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3923, 3924; Dec. Dig. ☞999(3).]

8. SHIPPING ☞115—ACTIONS FOR BREACH OF CONTRACT—BURDEN OF PROOF.

A steamship company, failing to deliver a cargo as agreed, had the burden of justifying its failure to perform the contract.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 433; Dec. Dig. ☞115.]

9. SHIPPING ☞115—CARRIER OF GOODS—BREACH OF CONTRACT—EXCUSES.

That quarantine regulations were in force in Porto Rico under which a steamer, after docking at San Juan, would not be permitted to dock at any other port, did not excuse the failure of a steamship company to deliver a cargo at Guanica, if in the exercise of ordinary prudence quaran-

tine could have been avoided, as by lightering the San Juan cargo, or proceeding to other Porto Rican ports before unloading the San Juan cargo; and when the company, with full knowledge through its agent of the circumstances, permitted the vessel to dock at San Juan, it assumed the risk of the damages which would result if a jury should find that its conduct was negligent.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 433; Dec. Dig. ☞115.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the Guanica Centrale against the New York & Porto Rico Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher and Roscoe H. Hupper, both of New York City, of counsel), for plaintiff in error.

Rounds, Hatch, Dillingham & Debevoise, of New York City (Edward S. Paine and John Fine, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This action has been brought to recover damages in the sum of $35,023.41 because of the failure of the plaintiff in error, hereinafter called defendant, to perform its contract as a common carrier and safely transport from New Orleans, La., to Guanica, Porto Rico, and there deliver to defendant in error, hereinafter called plaintiff, certain merchandise. The merchandise consisted of 5,373 bags of fertilizer known as sulphate of ammonia, together with two parcels of other freight. The plaintiff obtained a verdict in its favor and judgment was entered in the sum of $2,517.06.

The defendant is a steamship company organized under the laws of the state of Maine and it owns vessels plying between the United States and Porto Rico. Its steamship, Pathfinder, sailed from New Orleans for Porto Rico on June 18, 1912. It carried a cargo of 2,378 tons, of which 543 tons consisted of bags of fertilizer. Its cargo was destined for 10 Porto Rico ports, the first of which named on her cargo report was San Juan and the last of which was Guanica. San Juan is on the north side of the island and Guanica is on the south side, the two ports being about 12 hours' sail apart. The defendant's principal office in the island was maintained at San Juan, where its chief representative and superintendent on the island resided.

The bubonic plague was currently reported as existing at San Juan on June 15, 1912, and on June 19th its existence in the city was officially announced. On that day the representatives of the steamship companies in San Juan were called to the quarantine office by the chief quarantine officer for Porto Rico, who was stationed in San Juan, and the requirements of quarantine were explained to them. A representative of the defendant was at the meeting. On June 23, 1912, a quarantine was declared by the Marine Hospital Service of the government, and

an official circular was issued, which formally notified the steamship companies that a quarantine was in effect.  A copy of this circular was sent to defendant, who probably received it on the next day.  The circular read as follows:

"The following are the general regulations for water traffic between San Juan and other Porto Rico ports:

"These regulations are intended to be general and the quarantine officer at each port must use his best judgment in the management of individual cases.

"The precautions will be directed entirely against the introduction of rats from San Juan.  Vessels will be fumigated for rats at San Juan when empty, and loading will be done by lighters or under sufficient precautions at wharf.

"At other ports discharge of freight may be allowed by lighters only, and crews of such vessels as have fumigation certificates not over two weeks old may be allowed on shore after passing inspection.  Passengers may go ashore after passing inspection and may go aboard without inspection.  The only absolute rule is that no vessel in San Juan trade is allowed at any wharf.

"You will do everything possible to expedite business, remembering that restrictions are against rats almost entirely."

In explanation of the circular it is necessary to refer to the method by which bubonic plague is transmitted.  It appears that the source from which it is transmitted to human beings is the rodent family, of which the commonest species is the ordinary rat.  Rats have fleas, and when a rat becomes infected and dies the fleas seek other means of support.  If an infected flea comes in contact with a human being, the disease may be transmitted.  Inasmuch as fleas do not leave the rat until the rat is dead, the question of preventing the spread of bubonic plague becomes a question of preventing the transfer of rats from a place where the disease exists to a place where it does not exist.  Rats are fond of ships, and if an opportunity to board a vessel presents itself they are disposed to take advantage of it, and frequently do so.  The quarantine regulations accordingly provided for the immediate quarantine of any vessel which had been alongside a dock in San Juan, even though she had not taken on any cargo there.  On the other hand, if a vessel did not come in contact with the wharf, but remained more than a rat-jump away from it, there was no danger that she would carry infection to other places and no necessity for her being quarantined.  For these reasons vessels which had docked at San Juan were prohibited from thereafter going alongside a dock at any other port, and vessels which had not docked at San Juan, but had lightered their cargo, could dock at other ports in the island.

The steamship Pathfinder, with plaintiff's consignment on board, arrived in the harbor of San Juan on June 25, 1912, between 7 and 8 o'clock in the morning.  The defendant's superintendent was on the dock as the vessel came up the harbor, and first saw her when she was coming inside the bay about 15 minutes before she docked.  He knew she had cargo on board for Guanica, and although he could have signaled her to stop before coming alongside the dock, he failed to do so.  He testified that he had received the circular; that it was no surprise to him; that he read it at the time, but did not notice the sentence in it that said, "The only absolute rule is that no vessel in San Juan trade is allowed at any wharf;" that he did not notice that until the captain

of the Pathfinder told him that he had heard the Pathfinder would not be able to discharge at Guanica wharf; that the movements of the Pathfinder were under his control, and if he had directed her to stay out in the bay, instead of docking, she would have done so.

On June 24th, the day before the ship's arrival, one of the plaintiff's lawyers had consulted the surgeon in command of the public health department in Porto Rico, and found that no vessel that docked at San Juan could thereafter dock at any other port in the island, but would be obliged to discharge cargo elsewhere around the island by lighters, unless she discharged her cargo at San Juan by lighters without docking there. He thereupon on the same day conferred with defendant's superintendent for Porto Rico and discussed the situation with him, explaining to him that it would be practically impossible to discharge cargo at Guanica by lighters, inasmuch as there were no lighters at that port, and that it would be a matter of considerable expense as well as difficulty to procure lighters from either Ponce or Mayagnez, the nearest ports where lighters were used. Ponce is about 30 miles, and Mayagnez from 45 to 55 miles, from Guanica. There is a deep-water dock at Guanica, and the port on that account supported no lighters. The defendant's representative was therefore asked to arrange to have the Pathfinder dock at Guanica before docking at San Juan. But he refused his assent. The testimony showed that there were a number of lighters at San Juan.

The Pathfinder docked at San Juan. This made it necessary to discontinue the voyage to Guanica, and the whole cargo of fertilizer was put ashore at San Juan and stored for the account and risk of the plaintiff.

1. The defendant's superintendent might have stopped the Pathfinder far enough from the dock to have made it impossible for a rat to jump aboard, and then lightered the San Juan cargo, and the vessel could then have continued on her voyage.

2. Or he might have stopped the vessel before she docked, and sent her to Guanica and other island ports first, and then returned to San Juan and docked.

3. Or he might have done what he did do, dock the vessel, and thereby make it impossible for her to proceed farther on her voyage.

He chose to adopt the last course. This enabled him to deliver the San Juan cargo, amounting, as has been stated, to 843 tons out of a total of 2,378 tons she had on board and was to have delivered at other Porto Rico ports.

There is no question but that it is a carrier's duty and obligation to make delivery, in accordance with its contracts, of goods which have been delivered for shipment and accepted, unless delivery is prevented by an act of God, or of the public enemy, or by some cause against which it has protected itself by stipulation in the bill of lading. In the case at bar the contract was not performed, and the defense interposed is that stipulated for in the bill of lading, the quarantine regulation which prevented the ship from leaving San Juan.

The District Judge in his charge called the attention of the jury to the provision in the bill of lading, "That if the ship is prevented by

quarantine from reaching her destination or making due delivery of the goods, or is detained at quarantine," the goods could be discharged, etc., and pointed out that that was the defense upon which the defendant rested. He then instructed the jury that if the steamship company, by its master or its agent, negligently allowed the ship to run into quarantine, the defendant could not avail himself of that defense, and said:

"The plaintiff had a right to have the steamship company deliver its goods at the point of destination, but that if the steamer ran into quarantine the law imposed upon the master or its agent or the agent of the company at San Juan, the duty of exercising ordinary care, that is, that care which an ordinarily prudent person would exercise under all the conditions as they then and there existed at the time. And if you find—this is your only question—that the steamship company did what the ordinarily prudent man would do, considering all of the facts as they were then presented to the captain and to the agent of the steamship company, if they then exercised the ordinary care of an ordinarily prudent person, then of course the plaintiff could not recover. But if on the other hand you should find from all of this evidence, analyzing it, considering the motives and drawing fair conclusions from it, that the agent at Porto Rico did not exercise ordinary care, that is, that care which an ordinarily prudent person would exercise, in the day and time of it, cognizant of all the conditions—that if he did not exercise that ordinary care then the defendant is liable."

## He charged:

"It is in evidence as to the question of which cargo was entitled to greater consideration. If there was a part of that cargo entitled to greater consideration than any other part, that is a fact or circumstance to be taken into consideration. The question of being able to lighter it at Ponce has been raised; you will take that into consideration. The general character of the cargo destined for all the ports should be taken into consideration. I make this point as impressive as I can to you, that it is not proper for you to determine, gentlemen, in the light of past events, as to what a person should have done then and there, but you are to decide what they should have done as the conditions then and there presented themselves to this defendant, and of course acting by its agents."

## He charged:

"If you find that the defendant's representative at San Juan could, by the exercise of reasonable diligence or care, have prevented the steamship Pathfinder from docking at San Juan and could have directed the master to proceed to other ports on the island, including Guanica, and discharge at docks there, before docking at San Juan, and that this was reasonable under all the conditions and circumstances as they then presented themselves to the defendant's agent, this would be a fact or circumstance for you to take into consideration in determining the question as to whether they then and there acted negligently."

## He charged:

"The defendant must act with reasonable prudence for the interest of all concerned. It must endeavor to hold the balance between ship and cargo and between the cargo owners at different ports when their interests conflict. The existence of the quarantine in Porto Rico constitutes a complete defense to any claim by reason of nondelivery at Guanica, unless the defendant failed to exercise reasonable prudence for the interests of all concerned in docking the Pathfinder at San Juan."

## He charged:

"Unless you find that the situation as it then appeared when the Pathfinder arrived at San Juan was such as not to warrant the defendant in concluding

reasonably that it was for the interest of all concerned under the conditions then and there presented, that the San Juan cargo be discharged at the San Juan dock, you must find for the defendant."

He charged:

"In considering whether the defendant acted with reasonable prudence for the interest of all concerned, you are to consider the situation then existing as to lighterage at Ponce, the cost of lightering at San Juan and the added risks therefrom, the character of the cargoes, the added cost and delay that would have resulted if the Pathfinder had proceeded to Guanica first, the quantity and character of the freight consigned to the two places, and all the facts which would affect it, and consider these in determining that same question of whether the defendant acted then and there as an ordinarily prudent man would have done under the conditions."

[1] The following request to charge was refused:

"The consignees at San Juan were entitled to demand immediate delivery at the dock of their goods, and unless upon the Pathfinder's arrival at San Juan it was reasonably apparent that reasonable prudence for the interests of all concerned required such a course the defendant would have had no right to proceed first to Guanica and there discharge the fertilizer, nor to discharge the San Juan cargo by lighters."

The refusal of this request was justified. The court had fully and fairly presented the case to the jury, and the refusal to give this particular request would not justify this court in sending the case back for a new trial.

[2-4] Negligence is a question of law and fact. It arises from a failure to perform a legal duty, and it includes two questions: First, whether a particular act has been performed or omitted. Second, whether the performance or omission of this act was a breach of a legal duty. The first question is one of fact. The second is one of law. "The law determines the duty; the evidence shows whether the duty was performed." Nolan v. New York, N. H. & H. R. R. Co., 53 Conn. 461, 471, 4 Atl. 106 (1885). So that negligence is the failure to perform some act required by law. The duty in this case was to make delivery of the cargo to this plaintiff at Guanica. A similar obligation, however, rested on defendant to deliver a portion of the cargo to consignees at San Juan and portions to consignees at other ports. The consignees at San Juan were as much entitled to receive their cargo at San Juan as plaintiff was to receive its at Guanica. The duty resting on the carrier was a duty to all the shippers and the case cannot be disposed of as though the plaintiff's goods were the only goods on board. As said by Judge Addison Brown in The Bohemia (D. C.) 38 Fed. 756 (1889), "The rights of each and all must be considered." The extent of defendant's duty must be determined by a consideration of all the surrounding circumstances, and the court so charged.

[5] The rule on the subject of negligence is stated in Shearman & Redfield on Negligence, § 54, as follows:

"The question of negligence must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such a difference as to the inferences which might fairly be drawn from conceded facts. Where this is the case the issue must go to the jury, no matter what may be the opinion of the court as to the value of the evidence, or the credibility of the witnesses."

[6] We think that this is a correct statement of the rule, and that in accordance therewith the District Judge left it properly to the jury to determine whether the defendant was or was not negligent in the course it pursued.

[7] The jury by its verdict has found that the defendant was negligent in the course it adopted, and as the question of defendant's negligence was one which could properly be submitted to the jury, we cannot review the conclusion which the jury reached.

[8, 9] The defendant had agreed to deliver plaintiff's cargo at Guanica. It did not do so, and the burden of justifying its failure to perform the contract rested upon it. The fact of quarantine did not excuse the failure to perform, if in the exercise of ordinary prudence quarantine could have been avoided. The defendant's agent could have stopped the ship before she docked, and the San Juan cargo might have been lightered and at comparatively small expense, which might well have been assumed under the circumstances. Or the vessel might have proceeded directly to Guanica, a few hours distant, unloaded the cargo for that port, and then returned with the remaining cargo to Porto Rico. When defendant, with full knowledge, through its agent, of the circumstances, permitted the vessel to dock, knowing that the moment she did so she would be quarantined, it assumed the risk of the damages which would result if a jury should find that its conduct was negligent.

Judgment affirmed.