BELL v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Instruction.** When the petition charges negligence as the plaintiff's ground of action, and there is no question of unskillfulness on the part of defendant raised either by the petition or the plaintiff's evidence, the plaintiff is not entitled to an instruction as to the effect of unskillfulness on the part of defendant.

2. **Negligence, when a Question of Fact, when of Law.** Where the facts are disputed, the question of negligence is eminently one for the jury, under the instructions of the court; where they are clear and undisputed, it is undoubtedly the province of the court to declare the inference from these facts.

3. **Railroad:** SIGNALS AT PUBLIC CROSSINGS. The requirement of section 806, Revised Statutes, that the bell shall be rung or the whistle sounded at the approach of a railroad train to the crossing of a public highway, is for the benefit of persons on the highway at or approaching the crossing; failure to comply with the statute will furnish no ground of complaint to a person injured on the track at a distance from the highway.

The statute does not require that these warnings shall be con-

tinued until the train has passed the crossing, but only until the engine has passed.

4. ———: MAN ON THE TRACK: ENGINEER'S DUTY. An engineer in charge of a moving-train has a right to assume that persons past the age of childhood will heed the usual alarm signals. If after giving such signals without effect, he uses such means as in his judgment are, in the emergency, most advisable to prevent collision with a person standing on the track, he is not chargeable with negligence, and the company cannot be held liable for the consequences of a collision, although he failed to use other means which were at hand, provided he is competent and experienced in his business.

In this instance the engineer applied the air brakes to the train, but did not attempt to reverse the engine.

5. ———: NEGLIGENCE: CONTRIBUTORY NEGLIGENCE. The mere fact that a train was moving at a dangerous rate of speed, will not make the company liable for injuries to a person run over by the engine, if he was himself guilty of contributory negligence.

*Appeal from Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*Geo. W. Easley* for appellant.

*Louis Houck* for respondent.

NAPTON, J.—This was a suit to recover damages under the 2nd section of the damage act, based on the allegation that the plaintiff's son, Athen Bell, was killed by the negligence of the defendant's agents, in running a train through the town of Meadville, at an improper rate of speed and without giving timely notice of its approach.

It seems that Athen Bell, who was past fifteen years old, and well grown for his age, had, at the request of his father, who had recently moved from Saline county into that neighborhood, gone to Meadville to procure some corn, and that about two o'clock in the afternoon, when the fast passenger train of defendant from the east was due, he stood upon the main track between the rails looking at an engine attached to a freight train which was on the switch

south of the main road, waiting for the fast train to pass, which did not stop at Meadville. His attention seems to have been absorbed by this locomotive. At all events he seems not to have heard the station signals which were given at the usual place east of town, and about a half mile from the depot; nor did he pay any attention to the alarm whistle which the engineer had sounded, as soon as he saw the boy on the track. The boy was west of the street or road which crossed the railroad, from forty to sixty feet. How far the boy was from the train, when the engineer discovered him on the the track, is not certainly fixed by the testimony, not less however than 200 yards. The train could have been seen for six or seven hundred feet. The alarm whistle was kept continuously blowing and also the bell was rung, according to some witnesses. When the engineer discovered that the boy did not move, he put on the brakes, but it seems that it was too late to save the life of young Bell.

The following were the instructions in the case given at the instance of the plaintiffs:

1. It stands admitted by the pleadings in this cause that on the 11th day of May, 1875, on the track or line of the Hannibal & St. Joseph Railroad, in the town of Meadville, in Linn county, Athen Bell, the son of the plaintiffs, was struck and killed by a locomotive engine attached to a train of cars, run and operated on defendant's said railroad by its agents, servants and employees.

2. If the jury believe from the evidence that the plaintiffs, John A. Bell and Eliza J. Bell, are husband and wife, and the parents of Athen Bell, who was killed on defendant's railroad at the time and place stated in the petition, and that said Athen Bell was, when so killed, a minor and unmarried, then the jury should find their verdict for the plaintiffs; provided they further believe from the evidence that said Athen Bell died from an injury resulting from or occasioned by the negligence or unskillfulness of any agent or employee of the defendant whilst running,

conducting or managing the locomotive engine and train which ran upon, struck and killed said Athen Bell.

3. It is the duty of those in charge of a locomotive and train of cars in approaching the crossings of the public streets to commence ringing the bell or sounding the steam whistle at the distance of eighty rods therefrom, and to keep ringing the bell continuously or sounding the steam whistle at intervals until the train shall have passed over such public street, and if the jury believe from the evidence that, in this case, as the train approached and passed over a public street in the town of Meadville, the person in charge thereof did not ring the bell or blow the whistle as above required, and that the boy, Athen Bell, was struck by the locomotive and killed by reason of said omission and without fault on his part, then the jury will find their verdict for the plaintiffs.

4. Railroad companies and those operating and running their trains should exercise greater care and caution at points where their road passes through populous towns and villages than would be necessary in districts not so thickly populated.

5. Railroad companies, owing to the dangerous character of the vehicles and machinery which they operate, are held to the greatest care, caution and skill in the management of their business.

6. Notwithstanding the jury may believe from the evidence that the said Athen Bell was improperly on the track of defendant's railroad, and that it was negligence on his part to have been there at that time; yet if the jury further find from the evidence that the servants and employees in charge of the engine and train mentioned in the petition were negligent in running and managing the same, and that such negligence and improper management of said engine and train were the direct and immediate cause of the death of said Athen Bell, then the jury are bound to find for the plaintiffs.

7. Although the jury may believe from the evidence

that the boy was improperly on the track, and that he may have been negligent in standing thereon; yet if the jury believe that those in charge of the train could, by the proper observance of their duties and by ordinary care, prudence and caution in their business, have slacked up the speed of the train, by any means in their power, so as to prevent his killing, and that they failed so to do, then the persons in charge of the train were guilty of negligence for which the defendant is responsible.

8.    While railroad companies are not limited by law as to rate of speed, yet whether the rate of speed in any particular case is excessive or dangerous, is a question for the jury, to be determined by them in view of the time, place and circumstances, and if in this case the jury believe that the rate of speed at which the train was approaching the town of Meadville, and at the time the boy was struck, was excessive or dangerous at that time and place, then those in charge of it were guilty of negligence in so running it.

9.    In making up their minds whether the rate of speed at which the train was running at the time the boy was struck and killed was dangerous, the jury may take into consideration the time, place and all the surrounding facts and circumstances detailed in evidence.

The defendant then prayed the court to give the following instructions to the jury:

1.    The burden of proof is on the plaintiffs to show every material fact going to make up the issues, and unless they have proven by a preponderance of evidence to the satisfaction of the jury that young Bell was killed by the carelessness and negligence of defendant, and without his contributing proximately thereto, they must find for defendant.

2.    If the jury believe that deceased was killed by reason of his own negligence and not by the negligence of defendant, then they must find for the defendant, although they may believe that at the time the train struck him it

was running at the rate of twenty-five miles per hour or faster.

3. Although the jury may believe that in some regards the defendant was negligent, yet if they further believe from the evidence that deceased, by the exercise of ordinary prudence and caution, could have avoided the accident, they must find for the defendant.

4. If the jury believe from the evidence that there is a curve in defendant's road just east of the depot at Meadville which prevented the engineer of the engine drawing the train in question from seeing Athen Bell upon the main track of said road between the crossing and said depot until such engineer was within 200 or 300 yards of said depot; that, owing to the grade on said road between said points, said engineer could not stop said engine and train after seeing said Athen Bell, so as to prevent striking and killing him; that said engineer sounded the alarm whistle on said engine as soon as he discovered said Bell to be upon said track, and kept sounding it so long as there was any chance of warning said Bell of the approach of said engine and train, they will find for the defendant, notwithstanding they may further believe from the evidence that said train was running at a speed of twenty-five miles an hour or faster.

5. If the jury believe from the evidence that the engineer of the engine drawing the train in question could not see Athen Bell, the deceased, until within from 200 to 300 yards of him, and that owing to the grade he could not stop his train after so seeing said Bell, so as to prevent striking and killing him, they will find for the defendant, provided they shall further believe from the evidence that said engineer sounded the alarm whistle as soon as he discovered said Bell to be upon the main track of defendant's road and kept sounding it so long as there was any chance of warning said Bell of the approach of said engine and train.

6. Although the jury may believe that the train which

struck young Bell was running at the rate of twenty-five miles per hour or more, and that he was struck near the Meadville depot, and that the bell was not ringing, yet that will not excuse him from carelessly and negligently standing on the defendant's track at a time when a fast train was due, and if the jury believe his death resulted immediately from his imprudence in so standing on said track, and the accident could not have been avoided by defendant with proper care and prudence, the plaintiffs cannot recover.

7. If the jury believe from the evidence that Athen Bell, the deceased, was a person of sufficient size to be apparently capable of taking care of himself, the engineer of the engine which struck him had a right to presume that, upon due warning being given to said Athen Bell, he would leave the track and get out of the way of said engine.

8. If the jury believe from the evidence that defendant's train could have been seen by young Bell at the time of the accident a distance of 200 steps or more from the spot where he was struck by the engine, or that he could have heard it that or a greater distance had he exercised his senses of sight and hearing, notwithstanding which facts he remained on defendant's track and was struck and killed by the engine, such action on his part was negligence, and if the jury believe his death was caused proximately by such negligence, the plaintiffs cannot recover.

9. It is negligence and carelessness for a person to stand on the track of a railroad without keeping watch both ways for trains. And if the jury believe from the evidence that Athen Bell was standing on the defendant's track at the time the defendant's fast train was due, and that the agents of defendant in charge of said train exercised ordinary care and prudence in the management of said train, and did all they could to stop the train and avoid the accident at the time said Bell was struck, then they must find for defendant.

Bell v. The Hannibal & St. Joseph Railroad Company.

10. Although the jury may believe from the evidence that the defendant was negligent in running and operating its train which struck and killed Athen Bell, still the plaintiffs cannot recover unless the jury believe from the evidence that such negligence of defendant was greater than that of said Bell in standing on defendant's track at the approach of said train.

11. Although the jury may believe from the evidence that the engineer of the engine that struck Athen Bell did not reverse his engine, yet he had a right to presume that said Bell would get off the track on the approach of the engine, and if he, said engineer, acted upon his judgment and did what he judged was most likely to save the boy in applying the air brakes and sounding the danger signals, then his omission to reverse his engine was not negligence.

The court gave those numbered one, two, three, four, five, six, seven, eight, nine and ten, and refused to give that numbered eleven. To the refusal of the court to give that numbered eleven, the defendant at the time excepted.

The objections taken here to the second instruction, given for plaintiffs, we do not consider as tenable, except 1. INSTRUCTIONS., that the word " unskillfulness " should have been omitted, as there was no charge of that in the petition, and indeed no evidence touching the subject, on the side of the plaintiffs.

The principal objection is, that the instruction leaves the whole subject of negligence to the jury. According 2. NEGLIGENCE, to the prevalent practice here, the court that WHEN A QUESTION OF FACT. WHEN OF LAW. presides at the trial of a case gives instructions prepared by the attorneys on each side, which are usually drawn up in the shape of independent, separate propositions, and to ascertain the propriety of any single one, it must be considered in connection with the other instructions on each side. Where the facts are disputed, the question of negligence is eminently one for the jury, under the instructions of the court. Where the facts

are clear and undisputed, it is undoubtedly the province of the court to declare the inference from these facts. Mr. Wharton in his work on Negligence, observes: "The true position is this: Negligence (with the exception hereafter to be noted) is always a logical inference, to be drawn by the jury from all the circumstances of the case, under the instructions of the court. In all cases in which the evidence is such as not to justify the inference of negligence, so that a verdict of negligence would be set aside by the court, then it is the duty of the court to instruct the jury to negative negligence. In all other cases, the question is for the jury, subject to such advice as may be given by the court as to the force of the inferences. The only exception to this rule is that elsewhere discussed, where a statute declares that a party doing or omitting certain things is to be treated as negligent. In such cases all that the jury has to decide is whether the thing in question was done or omitted. If so, negligence is juridically imputed, and this must be declared by the court." Vol. 1, § 420. We see no substantial objection to the second instruction, when considered in connection with the other instructions given on each side.

The third instruction is also objected to on the ground that it had nothing to do with the case. We concur in 3. RAILROAD: sig- this view, although its impropriety alone nals at public crossings. would scarcely justify a reversal. The statute which requires the bell to be rung or the whistle sounded was for the benefit of persons at the road crossing or approaching it; but the boy killed in this case was not on the road, or at the crossing, but forty or sixty feet west of it. Besides, the instruction mistakes the requirements of the act in declaring that the bell shall be rung or the whistle sounded until the train shall have passed over such street or road, whereas these warnings are only required to be continued until the locomotive passes, not the entire train. However, this instruction was harmless, and had really nothing to do with the case.

It may be observed in advance of an examination of the real point and only point involved in this case, that young Bell was guilty of the grossest negligence, beyond all dispute, a negligence difficult to be accounted for, assuming him to have been a young man of ordinary intelligence and without any defect of sight or hearing, and there was no proof that he was not. His father had recently moved into the neighborhood of Meadville, and he had never lived near to any railroad before, and the boy was, therefore, naturally not familiar with their detailed operations.   Still he must have known, without any such familiarity, of the danger of standing on a railroad track and of the necessity of watching for the approach of a train.   He must have known that a person in such a position, to be safe, must use his eyes and ears. His attention was absorbed by a locomotive of a freight train on the switch south of the main track.   My conjecture is, that he believed that he was on a switch himself and that the main track was the one where he saw this train standing preparing to move.   He must have heard the alarm whistle which was sounded repeatedly, at first at a distance of 600 feet, but as I conjecture, thought the approaching train was on the same track with the train before him.   It is true he did not hear the man who hallooed to him to get off the track, to look out for the train, because the wind was blowing rather strong from the west or northwest, but the sharp whistle used to alarm cattle would be far more distinct and powerful than a human voice, and could scarcely have been unheard.   He had time after the whistle was sounded to get off the track—he was near the south rail—and two steps would have placed him out of the reach of the cars.

Notwithstanding his negligence, the employees of the railroad company had no right to run over him, and the decisive question in the case was whether, after discovering the position of young Bell and that he had not moved at the sound of the alarm whistle, the engineer did every-

*4. ——: man on the track: engineer's duty.*

thing in his power to avoid a collision. This question is presented by the seventh instruction given for plaintiffs, and was also the point upon which the eleventh asked by defendant was refused. The seventh instruction was right, if the words " by any means in his power" had been qualified by adding: " consistent with the safety of the train." The eleventh instruction asked by defendant presents in plain terms the real point in the case. The evidence shows that everything was done by the engineer, when he ascertained that Athen Bell did not move at the alarm whistle, except to reverse the engine, and the question is, whether the engineer in simply applying the air-brakes, and not reversing the engine, is to be regarded as justified by the circumstances upon the ground that he acted on his judgment, which, whether right or wrong, had to be formed instantaneously. Upon this subject the engineer testified : " It would help to stop the engine to reverse the engine. I saw the boy, but did not reverse the engine." " There is danger of blowing off the cylinder head in reversing an engine. In cases of this kind I don't reverse the engine, according to my judgment. I whistled to save the boy. I could not whistle and reverse the engine at the same time ; did not reverse the engine, so I kept on whistling ; would have to quit whistling to reverse the engine ; you have to use both hands in reversing an engine. The cab of an engine is six or seven feet wide ; the bell cord is on the left hand side ; it would not take very long to reverse an engine ; it would take more than a second ; the whistle lever is four or five feet from me ; it is in the right hand corner ; could not have reversed the engine with one hand ; if you did not get the lever clear over it would make it worse ; could have quit whistling and reversed and gone to whistling again ; don't think we would have slackened up much if any more by reversing." If this engineer was a competent one, and the proof was that he was one of the best in the employment of defendant, and had been in the business ten years, and there was no contradictory testi-

mony, then it is clear that his judgment of what was best to be done must necessarily govern his action. This judgment had to be formed instantaneously, there was no time for deliberation, and, whether right or wrong, his action in accordance with it cannot be held negligence. The eleventh instruction asked by defendant should, we think, have been given, assuming, as in this case we are authorized to do, that he was a competent and careful engineer.

It is urged that this train was running at a dangerous rate of speed, through the town of Meadville, and that this 5. ——: negli- of itself was negligence. The schedule time gence: contribu-tory negligence. was twenty-five miles an hour, and Meadville was not a stopping point. That fact was known, doubtless, to every person in the village, and that it was four or five minutes behind time on the occasion of this unfortunate accident. There were various estimates of the speed of the train made by bystanders and passengers, which, of course, were of very little value. The engineer, however, admits that the train was running when it reached the outskirts of Meadville, at the rate of twenty-five or thirty miles an hour. The law has not fixed the rate of speed allowable, and conceding the speed in this case to have been unjustifiable, and that injury to persons and property under such circumstances would make the company responsible, yet it could only be when such persons were guilty of no negligence themselves, or such property was not negligently in the way. Had the plaintiffs' son been a boy of such tender years as to be incapable of taking care of himself, the question of the liability of the defendant on the sole ground of improper speed would have been properly presented, but nothing of this kind appears. The boy was in size and appearance a man, and he was taking a wagon to Meadville to procure a load of grain, and beyond all doubt his position on the track at the very time when the train was due, and when the spectators had gathered about the depot to witness the operation of the mail catcher, a recent invention by which a mail bag was transferred to a train in

motion, was unaccountable negligence. It would seem natural that the boy, seeing the crowd of spectators not far east of him, should have made some inquiry as to the cause. That the train was due and did not stop, and was accustomed to a rate of speed between twenty and thirty miles an hour, if not known to him already, could have been readily ascertained. The managers of the train, however, could not be affected by such negligence or ignorance. The engineer had a right to assume, when the boy came in sight, that he would step off upon the sounding of the alarm whistle, and the only qestion in the case was, whether, upon seeing the boy's position on the track, and that he persisted in staying there after repeated and continuous alarms of the whistle, the engineer did use all the appliances in his power to prevent a collision, according to his best judgment. Judgment reversed and cause remanded. All concur.