DONALD TRENT, an Infant, by EUGENE TRENT, His Guardian ad Litem, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant. (Action No. 1.)

EUGENIA E. TRENT, an Infant, by EUGENE TRENT, Her Guardian ad Litem, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant. (Action No. 2.)

EUGENE TRENT, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant. (Action No. 3.)

MARY TRENT, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant. (Action No. 4.)

Fourth Department, November 6, 1936.

*Ralph K. Robertson* [*Albert M. Kraus* and *John J. Sullivan, Jr.,* of counsel], for the appellant.

*Clayton M. Smith,* for the respondents.

LEWIS, J.   The defendant appeals from four judgments awarding to the plaintiffs damages for personal injuries sustained when an automobile in which they were riding was struck by one of defendant's trolley cars.

The accident occurred in Buffalo at the Elmwood avenue entrance to the New York State College for Teachers where a concrete driveway, leading from the street to the school buildings, passes over defendant's trolley tracks.   At that point defendant's tracks run parallel to and about twelve feet west of the paved portion of the street but within the highway proper.   On the night of the accident the infant plaintiff, Eugenia Trent, with her escort, Nathan Platt — both of whom were then members of the junior class — had arranged to attend a school dance to be held in one of the State buildings.   Her father, the plaintiff Eugene Trent, had offered to furnish conveyance and had permitted the daughter to drive his automobile accompanied by himself, the other two plaintiffs and Platt.   Proceeding southerly along Elmwood avenue to the school entrance described above, the car turned westerly into the concrete driveway and, according to plaintiffs' evidence, was brought to a complete stop east of defendant's north-bound track.   It is plaintiffs' claim that no trolley car was then observed approaching from either direction; that thereupon the Trent automobile moved forward and, as it reached a position across the nearer track, was struck by a north-bound car with resulting injuries to the four plaintiffs for which a jury has awarded a verdict in each instance.

The defendant has argued before us that plaintiffs' injuries resulted solely from their contributory negligence and not from any failure of care by its motorman.   From our examination of the record we conclude that the proof in that regard presented a question of fact which the jury has determined in accord with the weight of evidence.

However, we are not in agreement as to the propriety of the following portion of the court's charge which the defendant challenges as wrong in law and prejudicial to its rights: " On the question of the duty of the operator of the street car, he was bound under the statute at this point to use extreme care."

The statute to which the trial justice referred and which he read to the jury provides: " 12. The driver of any vehicle or street surface car upon approaching a bridge or in passing a public hospital, fire house or a school, shall proceed with extreme care and with vehicle or street surface car under control, provided State or municipal authorities have legible and visible signs posted to warn drivers of their approach to a bridge, fire house, public hospital or school building." (Vehicle & Traffic Law, § 81, subd. 12.)

The defendant asserts that the Legislature did not intend by this enactment to enforce the duty of extreme care except to avoid a contemplated peril to a certain class of persons under circumstances which, it is claimed, were not proved in this case. It is said that in the absence of proof that the school in front of which the accident occurred was *in session* at the time, the statute did not require of the motorman the exercise of " extreme care " as defendant's trolley car approached the point where the school driveway crossed its tracks. It has also been suggested that the statute does not afford protection to the public in general but only to a particular class, viz., those of school age who enter and leave public schools in large numbers. We believe that to thus limit the protective purpose of this statute is too narrow a construction.

The statute indicates a purpose by the Legislature to reduce the peril known to prevail at points where lanes of traffic to and from public hospitals, firehouses and schools intersect public thoroughfares or the tracks of street surface cars. Had the purpose been to impose the duty of " extreme care," only at times of greatest peril at those points — as, for example, when ambulances and fire apparatus are entering such intersections or when public schools are in session — we should expect to find a statutory limitation to that effect. Finding no such limitation the courts cannot add one. It was not within the power of the trial court to amend the statute while professing to construe and apply it. " Freedom to construe is not freedom to amend." (*Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341, 345.)

That the statute should be given a broader application than the one for which defendant contends is indicated by the fact that before the date of the enactment the Legislature itself had authorized the use of public schools " out of school hours " for various purposes, including " social, civic and recreational meetings and entertain-

ments * * * pertaining to the welfare of the community."
(Education Law, § 455, subds. 1-6.)

Furthermore, it is a matter of common knowledge that the use
of the district school — which in earlier days afforded little else
than a place where reading, writing and arithmetic could be taught —
has been enlarged with progress in methods of education. To-day
our modern public schools afford not only facilities for teaching
subjects within a broader curriculum but in addition State educa-
tional authorities now recognize and foster various extra-curriculum
activities for the student body. Among those activities are indoor
and outdoor athletic contests and numerous forms of social enter-
tainment, including student dances such as the one to which the
plaintiff Trent was conveying his daughter when they met with
the injuries for which they now seek to charge the defendant.

With these considerations in mind, we find that the custody
and management of the grounds and buildings of the New York
State Teachers College at Buffalo are placed by statute under the
jurisdiction of the State Department of Education. (Education
Law, §§ 832, 833, 812, 822.) There is also proof that the student
body of the institution itself included not only young men and
women of college age but children of grammar school age who
attended the " School of Practice," where, as the name implies,
the older pupils were afforded experience as student teachers. On
the night of the accident at least two gatherings were being held
in the State school which were reached from Elmwood avenue by
the driveway where the accident in question occurred. In the
School of Practice was a Boy Scouts meeting where twenty-five
boys were in attendance; in another building was the school dance
which the plaintiff Eugenia Trent was to attend.

These gatherings were proper uses of the State school property
in which they were held. The school authorities had apparently
so recognized such use for the buildings were illuminated and made
available for the purpose. Such use of the school also involved
passage over defendant's tracks by those going to and from those
gatherings, including the plaintiffs. To them as rightful users
of the driveway the defendant's motorman owed the statutory
duty of " extreme care " as his car approached the crossing. His
duty in this regard is emphasized by his admission that he had
operated upon that particular route for several years during which
time he had passed the site of the accident seven or eight times a
day; that on the night of the accident he knew of the sign near the
school driveway crossing which warned him of the " school zone;"
that he saw the buildings illuminated and " knew that something
was doing there."

We are thus led to the conclusion that defendant's challenge to the trial court's charge is not well taken and that the judgments and orders from which it appeals should be affirmed, with costs.

In each action separately: All concur, except TAYLOR and EDGCOMB, JJ., who dissent and vote for reversal and for granting a new trial, in an opinion by EDGCOMB, J. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

EDGCOMB, J. (dissenting). I cannot concur in the decision about to be rendered. I place my dissent upon an error in the charge relating to the duty of the motorman in the operation of his car. Subdivision 12 of section 81 of the Vehicle and Traffic Law, relating to the duty of the driver of a vehicle or street surface car upon approaching a hospital, firehouse or school, was read to the jury, and they were told that the motorman was bound to operate his car " in accordance with the statute with extreme care."

The respective plaintiffs were not persons for whose protection this provision of the law was designed. That being so, the statute has no application, and the charge of the court was erroneous, because, outside of some statutory obligation, the motorman would be bound to use only ordinary care — such usual and accustomed caution as is commensurate with the danger to be apprehended.

The mere breach of a statutory duty is not sufficient to give rise to a cause of action, unless such obligatory service is one which the defendant owes to the person injured. A right of action implies an obligation in favor of the one who complains. A statute will not be construed so as to charge one with a duty or obligation beyond that which the law-making body intended to impose. In determining whether the violation of a statutory duty constitutes negligence, regard must be had for the intent of the Legislature, the purpose of the enactment, the end to be effectuated, and the danger sought to be eliminated. A person may not complain because obedience has not been accorded a statute, if he was not one of the individuals included in the class directly to be benefited by the act. Disregard of a statutory mandate cannot be made the basis of recovery by one who does not come within the zone of apprehended danger. (*DiCaprio* v. *New York Central R. R. Co.*, 231 N. Y. 94, 97; *Lang* v. *New York Central R. R. Co.*, 227 id. 507; *Boronkay* v. *Robinson & Carpenter*, 247 id. 365, 368; *Harty* v. *Central Railroad Co. of New Jersey*, 42 id. 468; *St. Louis & San Francisco R. R. Co.* v. *Conarty*, 238 U. S. 243; *Popowich* v. *American Steel & Wire Co.*, 13 F. [2d] 381; *Pike* v. *Chicago & Alton R. R. Co.*, 39 Fed. 754; *Menut* v. *Boston & Maine R. R.*, 207 Mass.

12; 92 N. E. 1032; *Khinoveck* v. *Boston & Maine R. R.*, 210 Mass. 170; 96 N. E. 52; *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn. 461; 4 A. 106; *Byrnes* v. *Boston & Maine R. R.*, 181 Mass. 322; 63 N. E. 897; *Bell* v. *Hannibal & St. Joseph R. R.*, 72 Mo. 50; *O'Donnell* v. *Providence & Worcester R. R.*, 6 R. I. 211; *Cleveland, Akron & Columbus R. Co.* v. *Workman*, 66 Ohio St. 509; 64 N. E. 582; *Drennen Co.* v. *Jordan*, 181 Ala. 570; 61 S. 938.)

In construing a statute, the language employed cannot always be taken literally. A thing may be within the letter of the act, and yet not within its spirit. The intention of the lawmakers controls the meaning to be given to the law. (*Delafield* v. *Brady*, 108 N. Y. 524, 529; *Riggs* v. *Palmer*, 115 id. 506, 509; *Lake Shore & Michigan Southern R. Co.* v. *Roach*, 80 id. 339, 344; *Chew Heong* v. *United States*, 112 U. S. 536, 555.)

" The occasion of the enactment of a law may always be rererred to in interpreting and giving effect to it. The court should place itself in the situation of the Legislature and ascertain the necessity and probable object of the statute, and then give such construction to the language used as to carry the intention of the Legislature into effect, so far as it can be ascertained from the terms of the statute itself." (*People ex rel. Peake* v. *Supervisors of Columbia County*, 43 N. Y. 130, 132.)

In adopting subdivision 12 of section 81 of the Vehicle and Traffic Law, the Legislature had in mind localities where, because of the peculiar situation, an accident would be likely to happen, unless one passing the spot exercised more than ordinary care. A school, where a large number of children and youths, many of whom are young and immature, cross the highway, and where, unless the utmost vigilance is employed, some of them are apt to be injured, may well be put in a category by itself. It was to take care of such a situation that the statute in question was enacted. It was not the protection of the public in general that the Legislature had in mind when it required extreme caution on the part of the driver of a vehicle in passing a school, but of a particular class, viz., the large number of school children who go to and leave their school in throngs or crowds. The passing of a vacant or unused building, even if on occasions it is used for school purposes, is fraught with no unusual danger. The existence of a school house, when there are no pupils to come and go, creates no greater hazard to be avoided than that which exists when one is passing any other building. It is not the building which makes the school; that is but a shell. A school is an institution or collective body of teachers and pupils. There is no more reason for added caution in passing a school house on Sunday or in the night time,

when school is not in session, than there is in driving past any ordinary building. While the duty of a driver to use extreme caution in passing a school may not necessarily be confined to school children, that obligation does not go so far as to include all individuals who may be using the highway at a time when the school is not in session, and when every one knows that fact. (*Edger* v. *Allen*, 239 App. Div. 808.)

It is very true that the Education Law (§ 455) permits school houses and grounds to be used for certain specified purposes outside of school hours. They may be used as polling places for holding primaries and elections, and for the registration of voters. Can it be possible that the Legislature, in adopting subdivision 12 of section 81 of the Vehicle and Traffic Law, intended to require greater care on the part of the driver of a vehicle or street car in passing a polling place held in a school building, than would be required if he were passing a polling place in the next block held in a store? To ask the question is but to answer it. We must assume that the Legislature has a sound and consistent reason for all legislation.

While the accident in question occurred in front of a school building, the school was not in session. It was around nine o'clock in the evening. True, a dance was being held in the building, and one of the plaintiffs, Eugenia Trent, was on her way to the entertainment. The building could properly be used for that purpose outside of school hours (Education Law, § 455, subd. 3), but none of the plaintiffs, except Eugenia Trent, was going to the dance. Why does the fact that a dance is being held in a school house rather than in some other public hall increase the care to be exercised by one driving past the building? Is not the danger to be apprehended in one case the same as in the other?

These plaintiffs had no more right to rely upon the motorman s using extreme care in the operation of his car than the plaintiffs in the *DiCaprio* (231 N. Y. 94), *Byrnes* (181 Mass. 322), *Menut* (207 id. 12), and *Khinoveck* (210 id. 170) cases did in relying upon the railroad obeying the statute relating to the erection and maintenance of fences along its right of way, or than the plaintiffs in the *Harty* (42 N. Y. 468), *O'Donnell* (6 R. I. 211), *Workman* (66 Ohio St. 509), and *Pike* (39 Fed. 754) cases did in depending upon the railroad company complying with the statute requiring it to ring a bell or blow a whistle within a specified distance from a highway crossing, or than the plaintiffs in the *Lang* (227 N. Y. 507) and *Conarty* (238 U. S. 243) cases did in trusting that the railroad company would comply with the Federal Safety Appliance Act, or than the plaintiff in *Popowich Case* (13 F. [2d] 381) had in

expecting that the defendant would obey the statute requiring it to furnish a place of employment which would be safe for the employees therein and frequenters thereof, or than the plaintiff in the *Boronkay* (247 N. Y. 365) case did in relying upon the defendant's compliance with the statute and the ordinance prohibiting vehicles stopping with the left side to the curb. In each of the cases cited, had the defendant complied with the statute, the accident would never have happened, but in each case the court held that the act was not passed to take care of the particular hazard which caused the injury, and that the plaintiff could not, therefore, avail himself of its provisions.

It follows that the charge of the court constituted error. The expression "extreme care" carries to the average mind, and doubtless did to the jury, a care much greater than that of "ordinary care under the existing circumstances." The error cannot be said to be harmless. It is, in my opinion, sufficient to warrant a reversal of the judgment, especially in view of the closeness of the questions of fact involved in the cases.

I vote to reverse the judgment in each case, and to grant a new trial, with costs to appellant to abide the event.

TAYLOR, J., concurs.

In action No. 1: Judgment and order affirmed, with costs.

In action No. 2: Same decision and like cause of action as in companion case of *Trent* v. *International Railway Company. No. 1* (249 App. Div. 17), decided herewith.

In action No. 3: Same decision and like cause of action as in companion case of *Trent* v. *International Railway Company, No. 1* (249 App. Div. 17), decided herewith.

In action No. 4: Same decision and like cause of action as in companion case of *Trent* v. *International Railway Company, No. 1* (249 App. Div. 17), decided herewith.