## FOURTH DEPARTMENT, MAY, 1958

### (May 7, 1958)

■    NINA NORTHUP, an Infant, by CARLTON E. NORTHUP, Her Guardian ad Litem, Respondent-Appellant, v. GILBERT GAGE, Respondent, and ROBERT ULMER, Appellant. CARLTON E. NORTHUP, Respondent-Appellant, v. GILBERT GAGE, Respondent, and ROBERT ULMER, Appellant.

Appeals, by defendant Robert Ulmer (1) from the judgments of the Supreme Court in favor of plaintiffs and against said defendant, entered June 4, 1957, upon a verdict rendered at a Trial Term, and (2) from the order of said court, entered June 10, 1957, which denied the motions of defendant Robert Ulmer for an order setting aside the verdict and for a new trial.

Appeals by plaintiffs (1) from orders of said court, entered May 28, 1957, which denied motions by plaintiffs for orders setting aside the jury's verdict in favor of defendant Gilbert Gage, and (2) from the judgments entered thereon.

Judgments and orders affirmed, with costs to plaintiffs-respondents.

HALPERN, J. (dissenting). In my opinion, there are two errors in this case which require reversal: — first, the court did not correctly charge the substance of subdivision 12 of section 81 of the Vehicle and Traffic Law, with reference to the duty of motorists approaching or passing a school; second, the court erred in holding that that section was applicable to this case at all.

The infant plaintiff, a girl 14 years of age, was riding on the rear seat of a motorcycle owned and operated by the defendant Gage, when the motorcycle collided with an automobile owned and operated by the defendant-appellant Ulmer. The accident took place at dusk, about 7:30 P.M., on October 11, 1955 on Route 245, a State highway, just outside the village of Rushville in Yates County. The infant plaintiff was injured in the collision and an action was brought on her behalf by her father as guardian ad litem for her injuries and a separate action was brought by the father for medical expenses and loss of services. The jury returned a verdict in favor of the plaintiffs against the defendant-appellant Ulmer but the jury found no cause of action as to the defendant Gage.

The infant plaintiff had asked the defendant Gage, who was visiting her family, to give her a ride on his motorcycle. He agreed to do so and, with the infant plaintiff on the rear seat, he proceeded south down Route 245 toward the Middlesex Valley Central School, about eight-tenths of a mile away, with the intention of turning around at the school and returning home. The school was closed; no activities of any kind were in progress there. It was Gage's intention merely to use the school road or driveway as a convenient place in which to turn around.

The defendant Gage testified that he saw the car of the defendant-appellant Ulmer behind him but he nevertheless started to turn to the left to enter the school road or driveway, without giving any signal of his intention to do so. The motorcycle ran into the side of the Ulmer car, which was apparently then engaged in passing the motorcycle on its left. The accident took place in the center of the highway; neither vehicle was in the school driveway.

The defendant-appellant Ulmer testified that, at the time of the accident, he was driving about 50 miles per hour, which was the speed limit in the area.

As the photographs in evidence show, the school was located out in the open country, several hundred feet east of the highway. The side or end of the school building was nearest the highway. The front of the building faced the school road which ran off to the east of the highway at right angles to the highway. This road was sometimes referred to as a driveway but it was paved as a road and it was the same width as the State highway. There was no sidewalk leading from the school to the State highway. The only sidewalk from the school led to the intersecting road or driveway. In view of the physical situation, it is questionable whether a motorist driving along the highway at this point could properly be regarded as approaching or passing a school within the meaning of subdivision 12 of section 81 of the Vehicle and Traffic Law (*Rosenstrom* v. *North Bend Stage Line,* 154 Wash. 57) but for the purpose of this appeal, I shall assume that the motorist was chargeable with approaching or passing a school.

Subdivision 12 of section 81 requires the driver of an automobile approaching or passing a school, to " proceed with extreme care " and with the automobile " under control ", provided that the authorities " have legible and visible signs posted to warn drivers of their approach " to the school. There was a sign about 500 feet north of the school driveway reading " School Ahead Slow ".

In his charge, the Trial Judge made no reference to the language of subdivision 12 of section 81 but concentrated solely upon the presence of the

sign. He said that signs "are placed there to be obeyed, and when they are not obeyed that violation constitutes an infringement of the provisions of the Vehicle and Traffic Law of this state". He subsequently charged that the violation of the statute constituted negligence as a matter of law.

While the Trial Judge did not use the word "slow" in his charge, the jury had before it a photograph of the sign and the uncontradicted testimony that the sign contained the word "slow". When the Judge's charge is read in the light of this evidence, it is apparent that, in effect, the jury was instructed that it was the duty of the defendant-appellant to drive his car slowly as he approached the school and that if he did not do so, he was guilty of negligence as a matter of law. This was tantamount to a direction of a verdict against the defendant since concededly the defendant was not driving slowly at the time of the accident and had not slowed up prior to that time.

The court's charge thus distorted the meaning and effect of subdivision 12 of section 81. The question was not whether the defendant had obeyed the sign; the sign was only a warning of the approach to the school required by subdivision 12 of section 81. The question (on the assumption that subdivision 12 of section 81 was applicable at all) was whether the defendant had obeyed the statutory direction to drive with "extreme care" and with his vehicle "under control". Driving with extreme care does not necessarily require one to drive slowly nor does it necessarily require one to reduce his speed. What constitutes extreme care depends entirely upon the circumstances. One may comply with that standard while continuing at an unabated speed, if there is no apparent danger in sight and if none of the surrounding circumstances indicate the need for slowing down or for driving at a lower rate of speed.

The nature and effect of the sign are governed by the provisions of the Manual of Uniform Traffic Control Devices promulgated by the State Traffic Commission on April 28, 1948, to take effect September 1, 1948 (N. Y. Off. Comp. of Codes, Rules and Regulations [4th Cum. Supp.] pp. 1126–1323). The manual classifies traffic signs into three major classes, — regulatory signs, warning signs, and guide and information signs. Regulatory signs are in a series given the designation "R" or "P" followed by a number. Warning signs are in a series designated "W". The school sign of the type here involved, indicating the approach to a school and containing the word "Slow", is a warning sign, designated as sign "W 96" (p. 1175; see, also 8th Cum. Supp., p. 675).

As the manual explains, the sign is a warning sign and not a regulatory sign. The word "Slow" is merely used as a word of caution or warning; it has the status of a recommendation only. There is no duty to "obey" a warning sign as such. In this respect, the sign is wholly different from a regulatory sign like one fixing a specific speed limit, a sign forbidding turns in the highway or a stop sign requiring a complete stop at highway intersections (Vehicle and Traffic Law, §§ 95-b, 95-c, 95-d). A common example of a warning sign is a sign recommending a specified reduced speed at a sharp curve (Manual, pp. 1181, 1191–1192). There are various provisions in the statute making a failure to obey a regulatory sign a violation of law but there is no such provision as to a warning sign.

The failure to act in accordance with a warning sign is to be taken into account in determining whether the driver was chargeable with common-law negligence or contributory negligence or with a violation of any relevant statute of which the driver was given warning by the sign. But the failure to take the action recommended by the warning sign is not of itself a violation of statute.

The court's charge cannot be upheld by invoking subdivision 6 of section 88, which requires compliance "with any lawful traffic regulations displayed in any highway". This subdivision was superseded as to State highways outside of cities and villages by the enactment of article 7 of the Vehicle and Traffic Law, creating the State Traffic Commission and vesting sole control of State highway signs in the commission and specifying the effect of signs erected under the authority of the commission (Vehicle and Traffic Law, §§ 95–95-k; *People* v. *Yorktown,* 36 N. Y. S. 2d 83; 1941 Atty. Gen. 235). Furthermore, subdivision 6 of section 88 applies only to "traffic regulations" displayed on signs, i.e., regulatory signs; it does not apply to a sign which is merely a warning sign (cf. 57 N. Y. St. Dept. Rep. 256).

The court therefore erred in treating the word "Slow" on the sign as an independent speed regulation and charging the jury that it was the duty of the defendant to obey the language of the sign and that the failure to do so constituted a violation of the Vehicle and Traffic Law.

Furthermore, even if the trial court had couched its charge in the language of subdivision 12 of section 81 instead of the language of the sign, the charge would still have been erroneous because it was not proper to charge subdivision 12 of section 81 in this case at all.

The statute was enacted to protect persons going in or out of the school building and to guard against the risk of their being struck by automobiles. The infant plaintiff was not within the class of persons for whose protection the statute was intended and the accident in which she was injured was not within the class of hazards against which the statute was designed to guard. Even if it were found that the defendant had failed to comply with the statute, his noncompliance would be wholly irrelevant in this case. "Even where a statutory command is not obeyed there is no breach of duty towards those who do not come within the zone of apprehended danger" (*Boronkay* v. *Robinson & Carpenter,* 247 N. Y. 365, 368).

Civil liability grows out of the violation of a statute only in favor of the persons whom the statute was designed to protect and only with respect to the risks against which the statute was designed to guard (*Di Caprio* v. *New York Central R. R.,* 231 N. Y. 94; Restatement, Torts, § 286). As Dean Prosser summarizes the established rule:

"The violation of such a legislative enactment may be negligence in itself if:

"a. The plaintiff is one of a class of persons whom the statute was intended to protect, and

"b. The harm which has occurred is of the type which it was intended to prevent" (Prosser on Torts [2d ed.], p. 152).

To put the point in another way, — even if it is assumed in this case that there was a violation of the statute, it was not a breach of a duty owing to the plaintiffs. It therefore did not constitute negligence as to the plaintiffs (*Palsgraf* v. *Long Is. R. R. Co.,* 248 N. Y. 339).

The decision in *Trent* v. *International Ry. Co.* (249 App. Div. 17, affd. 273 N. Y. 622) is not in conflict with the conclusion here reached. In the *Trent* case, the defendant argued that subdivision 12 of section 81 was designed only for the protection of school children going to or from school during the usual hours of the school day. This argument the court properly rejected. The court held that the statute was designed for the protection of all persons, including members of the public other than school children, who were going to or from the school building for the purpose of participating in any activity legitimately carried on in the school. The court therefore held that, since the car in which the plaintiffs were riding was being used for the purpose of

transporting students to the school to attend a school dance, the plaintiffs were within the scope of the protection of the statute (see discussion of the *Trent* case in *Keane* v. *Felshin,* 258 App. Div. 269, 273).

The *Trent* case did not reject the general principle limiting civil liability for violation of a statute nor did it hold it to be inapplicable to subdivision 12 of section 81. It merely held that the class of persons for whose benefit subdivision 12 of section 81 was enacted was broader than that claimed by the defendant in that case and that it embraced all persons participating in any activity legitimately carried on in the school building. This is made clear by the long discussion in the Appellate Division's opinion of the variety of purposes for which school buildings in modern times are used outside of regular school hours (249 App. Div. 17, 20). In the light of this general use of school buildings, the court held, the Legislature must have had in contemplation not only the protection of school children but also the protection of adults who might assemble in large numbers in school buildings.

There was no holding in the *Trent* case that subdivision 12 of section 81 was applicable to every accident which occurred in a public highway in front of a schoolhouse. The presence of a school building is obviously irrelevant if the parties to the accident were traveling along the public highway in the ordinary way without any intention of going into the school building or using it for any purpose. Thus, for example, if the driver of an automobile proceeding in one direction on a public highway collides head-on with another vehicle going in the opposite direction, in the center of the public highway, opposite a school building, subdivision 12 of section 81 is wholly irrelevant in a civil action between the two drivers (cf. *Edger* v. *Allen,* 239 App. Div. 808).

The same result should be reached in this case. While it is true that the motorcyclist, with whom the infant plaintiff was riding, intended to turn into the school road or driveway, it was his intention to do so only for the purpose of conveniently turning around and returning home. There was no intention on the part of the cyclist or of the passenger to enter the school building for any purpose or even to get off the motorcycle in the school road or driveway.

As has been pointed out above, civil liability for violation of a statute is limited to the type of risk against which the statute was designed to guard. Civil liability may not be based upon the violation of a statute if the injury occurred through a risk not within the class of the risks against which the statute was designed (*Boronkay* v. *Robinson & Carpenter,* 247 N. Y. 365, *supra*). The statute here in question was designed to guard against the risk of injury to persons entering or leaving the schoolhouse, not to guard against the risk of automobile collisions in the public highway unrelated to the use of the school merely because they happened to occur in front of a schoolhouse. The risk of such collisions was no greater at that point in the public highway than at any other point. There is no reason to apply a special rule of liability with respect to a collision between motorists in the public highway, merely because they were both engaged in passing a schoolhouse.

The decisions in other States dealing with school zone statutes support the views here expressed (*Grant* v. *McKiernan,* 82 Ga. App. 82; *Whitley Constr. Co.* v. *Price,* 89 Ga. App. 352; *Quillin* v. *Colquhoun,* 42 Idaho 522; *Ross* v. *Reigelman,* 141 Pa. Super. 293; *Layman* v. *Gearhart,* 389 Pa. 187; 4 Blashfield Cyclopedia of Automobile Law and Practice, § 2721, p. 215).

I would reverse the judgments on the law and grant a new trial.

Present — McCurn, P. J., Kimball, Williams, Goldman and Halpern, JJ.

All concur, except Halpern, J., who dissents and votes for reversal and for granting a new trial, in an opinion.

Judgments and orders affirmed, with costs to plaintiffs-respondents.